Allen v. Logan.

ALLEN, *Appellant*, v. LOGAN *et al.*

1. **Ejectment**: EQUITABLE DEFENSE. Where in an action of ejectment the answer interposes an equitable defense, such defense must be determined unfavorably to the defendant before plaintiff's legal title can prevail, and, until such defense is determined, the case possesses all the attributes and features of a case in equity.

2. **Practice in Supreme Court**: EVIDENCE : DEPOSITIONS. Where the evidence in a case is in the shape of depositions, so that the lower court is denied the advantage of observing the demeanor of the witnesses when testifying, an equal opportunity is afforded the supreme as to the lower court of determining what probative force to give to the testimony of the witnesses thus testifying.

3. **Presumption**: PARTNERSHIP. The law presumes that business is conducted in the usual and ordinary way, and this presumption does not favor the existence of a firm when, neither in the promissory notes of its members nor in their muniments of title, mention is made of the alleged firm name.

4. **Partnership**: NEW PARTNER. The addition or subtraction of a member from a firm creates a new firm, and operates as a dissolution of the old one, even though the business be continued under the old firm name.

5. **Partnership, Expiration of**: POWER OF PARTNER TO BIND. After the expiration of a partnership, no power lies in a former partner to bind it.

6. **Partnership:** TENANTS IN COMMON. A deed to former partners, made after the dissolution of the partnership, will make them tenants in common. ( R. S. 1879, sec. 3949).

7. **Resulting Trust:** EVIDENCE. The evidence relied upon to establish a resulting trust and to change the *prima-facie* operation and effect of a deed must be clear, strong and unequivocal; so definite and positive as to leave no room for doubt, in the mind of the chancellor, as to the existence of such a trust.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

REVERSED AND REMANDED.

*Henry N. Ess* for appellant.

( 1 ) Evidence to establish a resulting trust must be clear, strong and unequivocal. *Woodford v. Stephens*, 51 Mo. 443 ; *Modrell v. Riddle*, 82 Mo. 36 ; *Johnson v. Quarles*, 46 Mo. 126 ; *Baker v. Vining*, 30 Me. 121 ; *Ringo v. Richardson*, 53 Mo. 394 ; *Boyd v. McLean*, 1 Johns. Ch. 582 ; *Forrester v. Scoville*, 51 Mo. 268. ( 2 ) A partner can, if he chooses, borrow money on his own account for the use of the firm, and so apply it. He alone will be liable for the money borrowed. *Wiggins v. Hammond*, 1 Mo. 122.

*Bryant & Holmes* for respondents.

( 1 ) The action being at law in ejectment for recovery of possession of real property, the interposition by defendants of the special defense setting up that plaintiff's claim of title was invalid as against defendants, because the property in controversy belonged to a partnership of which the person under whom plaintiff claims title was a member, and had been conveyed by said partners to pay a partnership debt before the sheriff's sale, under which appellant's grantor purchased, did not change the nature of the action to a suit

in equity, and the entire procedure of the trial of said action and the appeal from the judgment therein rendered, is governed by rules of practice in actions of law. *Plow Co. v. Hartman,* 84 Mo. 610 ; *Grayson v. Weddle,* 80 Mo. 39 ; *Carter v. Prior,* 78 Mo. 222 ; *Wolf v. Shafer,* 4 Mo. App. 372 ; s. c., 74 Mo. 154 ; *Smith v. Canning Co.,* 14 Mo. App. 522 ; *Joyce v. Murnaghan,* 17 Mo. App. 11. ( 2 ) The action being one at law and the case being tried by the court without the intervention of a jury and the declarations of law made by the court being conceded to be correct, and there being evidence to support the finding, this court will not examine into the evidence to determine its weight or sufficiency to sustain the finding. Such finding is conclusive on this court. *Johnson v. Lullman,* 88 Mo. 567 ; *Thies v. Garbe,* 88 Mo. 146 ; *Anderson v. Griffith,* 86 Mo. 549 ; *Webb v. Webb,* 87 Mo. 510 ; *Baum v. Fryrear,* 85 Mo. 151 ; *Miller v. Breneke,* 83 Mo. 163 ; *Cunningham v. Snow,* 82 Mo. 587 ; *Parkinson v. Caplinger,* 65 Mo. 290 ; *Harrison v. Bartlett,* 57 Mo. 170 ; *Douglass v. Orr,* 58 Mo. 573. ( 3 ) On the facts in evidence and found by the court in the judgment rendered in favor of defendants, the judgment was manifestly correct and in accordance with law and should be affirmed. *Priest v. Chouteau,* 85 Mo. 399, and cas. cit.

SHERWOOD, J.—In August, 1881, Joseph, Solomon and Louis P. Vail bought the land in controversy, two and one-fourth acres, now known as Logan's First Addition to the City of Kansas. The deed was made to them individually and not as partners. In June, 1882, Charles F. Link was approached by Louis P. Vail, and asked to lend him some money, Vail indicating to him the location of the property aforesaid, and saying that he owned it and wanted the money to pay his license, as he was about to engage in the saloon business, and did not wish to mortgage the property for so small a sum.

Link thereupon, believing Vail's statement as to the ownership of the property, loaned him the money, one hundred and eighty-five dollars, all he had. Vail failing to repay him, Link brought suit before a justice of the peace, recovered judgment and filed a transcript thereof in the office of the circuit court, on the twenty-first of August, 1882. After a return of *nulla bona* upon an execution issued on the judgment of the justice of the peace, execution issued from the circuit clerk's office, was levied upon the said land, and the interest of Louis P. Vail in the same sold, and Link became the purchaser, receiving a sheriff's deed. This sale occurred in June, 1883, and the sheriff's deed is dated the thirtieth of that month, and recorded on the fourteenth day of July next thereafter. On the day last mentioned, Link conveyed what he had purchased to Lithgow, and on the twenty-third day of the same month, the latter conveyed to Allen the plaintiff, the deed being recorded the next day. The Vail brothers, to whom the land was deeded as aforesaid, are the common sources of title.

On the eighth day of September, 1882, nineteen days after the transcript of the justice was filed, creating a lien on the land, Louis P. Vail, on his own behalf and as attorney in fact of his brothers, for an expressed consideration of two thousand dollars, conveyed by general warranty deed, the land to John Vail and Leander Vail, his uncle and nephew, and the deed was recorded on the same day. On September 21, 1882, thirteen days after the execution of that deed, John Vail and Leander Vail executed a warranty deed for the premises to the defendant, Wm. G. Logan. This deed expresses a consideration of twenty-four hundred dollars, was acknowledged in Pike county, Illinois, and placed on record October 4, 1882, since which time, Logan, and the other defendants claiming under him, have been in possession of the premises in dispute.

In September, 1883, the plaintiff brought ejectment for the one-third interest in the land aforesaid. In

October, 1883, Joseph, Louis P., Solomon, Leander and John Vail were made parties defendant on their own motion, and filed their amended answer as follows :

"Louis P. Vail, Solomon Vail, Joseph Vail and Leander Vail, defendants herein, in answer to plaintiff's petition, filed in this cause, say that they are the persons from whom and through whom Wm. G. Logan, Henry W. Neilson, J. C. Sherwood, Thomas Pearson, and S. M. Pearson, his wife, and Francis Menown, the present occupants of the land in controversy in this suit and co-defendants herein, claim title under deeds of general warranty.

"That Louis P. Vail, Solomon Vail and Joseph Vail were, in the month of August, 1882, and prior thereto, partners, and that said partnership continued and existed on and up to the month of December, 1882, and prior and subsequent to the fifth day thereof.

" That as partners and with partnership funds and for partnership purposes, the said Lewis, Solomon and Joseph Vail did, on the twenty-ninth day of July, 1881, or thereabouts, purchase the land now sought to be recovered by plaintiff in this suit and described in his petition; that Lewis, Solomon and Joseph Vail, in the month of August, 1882, and prior and subsequent thereto, were as partners indebted to John and Leander Vail for money advanced them for partnership purposes in the large sum of two thousand dollars or more, and that said indebtedness existed in the month of December, 1882, at and prior and subsequent to the fifth day thereof, on the part of the said Lewis, Solomon and Joseph Vail as partners to the said John and Leander Vail ; that at the dates and time named, to-wit, August and December, 1882, the liabilities of the said Lewis, Solomon and Joseph Vail as partners were in excess of their partnership assets ; that some time in the month of September, 1882, Lewis, Solomon and Joseph Vail conveyed to John and Leander Vail, creditors of the partnership, the property now in controversy in this

suit, to pay partnership indebtedness with, by a good and sufficient warranty deed which was duly recorded in the office of the recorder of deeds for Jackson county, Missouri, in the month of September, 1882; that prior to the deeding of the said property to John and Leander Vail, the said Lewis, Solomon and Joseph Vail as partners, had an amicable accounting among themselves of the firm's assets and liabilities, and the interest of each individual member, and found that Lewis P. Vail was indebted to the firm in the month of August, 1882, and prior thereto, in a large sum, to-wit, seven hundred dollars, for money withdrawn by him from the firm in excess of his contributions or profits, to or in the said partnership; that no part of the said seven hundred dollars, thus found to be due, was paid on or before the months of August and December, 1882, nor has yet been paid by the said Lewis P. Vail, or by any one else in his name or for his account; that in the month of August, 1882, or prior thereto, Lewis P. Vail became indebted to Chas. F. Link, in the sum of one hundred and eighty-four dollars; that said debt was contracted on the part of Lewis P. Vail as his own individual debt; that no portion of it was used by or contributed to the partnership; that at the time of the contraction, the partners of Lewis P. Vail, Solomon and Joseph, were in ignorance of it, did not authorize it, or at any time thereafter confirm his act or assume the responsibility for its payment; that in the month of August, 1882, or prior thereto, the said Chas. F. Link obtained judgment against Lewis P. Vail for the said indebtedness, before A. W. Allen, a justice of the peace, and in the month of December, 1882, caused a transcript of said judgment to be filed with the clerk of this court; that execution was issued to the sheriff of Jackson county, Missouri, who levied upon and sold the property described in plaintiff's petition, in the month of June or July, 1883; that at the time of said sale, these defendants by their attorney, J. J. Davenport, publicly

announced at the door of the courthouse, where the sale was about to take place, in the presence and hearing of said sheriff, and the said Link and one named Lithgow and many others then there, that Lewis, Solomon and Joseph Vail were partners at the time this land was purchased and that they had in good faith conveyed the same to John and Leander Vail, creditors of the partnership, who were then in possession of the same under deed of record, and that the claim of Link was for an individual debt for which the partnership assets were in no manner liable.

"Defendants say that plaintiff, prior to his purchase, had both actual and constructive knowledge of defendants' possession, claim and title to the land in controversy in this suit. Defendants deny each and every allegation contained in plaintiff's petition except what is hereinafter admitted. Wherefore defendants ask judgment and for such other and further relief as may be proper."

The reply of the plaintiff to this answer was, in effect, a general denial.

What the answer was of the other defendants, who were brought in by summons, the record does not disclose, nor whether there was any reply to the same. Both parties seem to have treated the answer of those defendants who came in of their own motion, as the answer of all the defendants. At any rate, the court below found for the defendants, in accordance with the allegations of the answer already set forth and entered a decree declaring the lien of the judgment in favor of Link, the deed of the sheriff to him, the deed of Link to Lithgow, the deed from Lithgow to plaintiffs null and void and of no effect as against all the defendants, except Lewis P., Solomon and Joseph Vail. Costs were also assessed in favor of the defendants and against the plaintiff, etc. The correctness of that decree is brought in question by this appeal.

I. Before discussing the merits of the decree, a

Allen v. Logan.

preliminary point must be disposed of: It is urged that this is an action at law, pure and simple, and in consequence of this, that the *whole case* is to be treated as one *at law*, notwithstanding the interposition of an equitable defense, and that in consequence, as the declarations of law were correct, this court will not examine the evidence in order to determine its weight or sufficiency. This idea is incorrect. When, as here, an action of ejectment is brought, and the answer interposes equities, which, if established, nullify the plaintiff's legal title, and pre-vent a recovery by him, then of necessity, the existence of those equities must be first determined and determined unfavorably to the defense, before the conceded legal title can prevail. If, upon examination, it be found that those equities raise a barrier which the legal title cannot overlap, then that result puts an end to the legal title, and it becomes subordinated to the paramount equities of the case. But while the examination is in progress, the case possesses all the attributes and features of a case in equity and is to be determined and adjudicated, to all intents and purposes, in precisely the same manner as if the equities in the answer had been embodied in a petition and made the basis of original affirmative relief. This principle must be the guide in the present instance.

II. There are some cases involving equitable questions where we have deferred somewhat to the findings of the lower courts upon questions of fact, and there are other cases where, notwithstanding a certain deference paid to those courts in this regard, we have yet felt constrained to arrive at conclusions from the evidence, totally at variance with those reached below. In the case at bar, the testimony is largely in the shape of depositions, and therefore, the advantages of observing the demeanor of the witnesses, when testifying, was denied to the lower court, so that an equal opportunity is afforded to this, as to that court, of determining what probative force to give to the testimony of the witnesses thus testifying.

III. It will be observed that the answer is bottomed upon the alleged existence of a partnership known as Vail Bros., or as Vail & Bros.; that the property in controversy was bought with partnership funds and for partnership purposes; that the conveyance made to John Vail and Leander Vail, in September, 1882, was made for the purpose of paying a partnership debt, and that the judgment recovered by Link was for the individual debt of Louis P. Vail. Reading the testimony in the cause, there is room for serious doubt whether in truth and fact there ever existed such a firm or partnership as Vail Bros. or Vail & Bros. It would be quite natural, where several brothers are engaged in business, and running up the usual accounts incident to supplies for their business, that they should be designated on the books of their creditors, as a short method of description, as above stated. The testimony on the subject of a partnership existing between Louis P., Solomon and Joseph Vail, from 1857 to 1882, must be regarded as too vague, shadowy and unsatisfactory, to warrant being made the basis of a decree; and this view is much strengthened, when it is noted that in none of the business transactions of the supposed firm, though said to continue for such a long space of years, neither in the promissory notes of the three brothers nor even in their muniments of title is mention made of, or allusion to, the alleged firm name. The law presumes that business is conducted in the usual and ordinary way ( *Fitzgerald v. Barker*, 85 Mo. 13, and cas. cit.), and this presumption does not favor the claim of the defendants concerning a partnership.

IV. But granting that such a firm as Vail & Bros. existed from a remote period down to a date comparatively recent, still it does not follow that it continued to exist as late as 1882, when the deed was made by the three brothers to John and Leander Vail, within a few days after the property conveyed had been bound by the lien created by the filing of the transcript from the justice of the peace; for it is quite certain that the alleged

original firm which originated in Pike county, Illinois, and had its *habitat* there, ceased to exist when removed to Texas, in 1879, and admitted to its membership several other persons; and this fact is established by the testimony of Doan, who testified that he was one of the partners, and that Petrie, the two Morrisons and the three Vail brothers were the others, the business being buying and selling cattle; and that when he sold out to the Vail brothers, they went into partnership with Petrie in the cattle business. Joseph Vail himself, one of the three, says that the firm in Texas was composed of the three brothers and a man by the name of John Petrie and that the partnership was dissolved in June or July, 1881; that they sold out then in Texas, owed no debts; brought to Kansas City six or seven thousand dollars, and that Petrie had no interest in the Kansas City land. This witness is sustained in his testimony as to Petrie being in the firm with them in Texas, but that they settled with him and bought him out, by the testimony of the two other brothers, Louis P. and Solomon. There is no pretence that after the settlement with Petrie, and his interest was purchased, any other firm was formed, after the dissolution and after selling out in Texas. Solomon Vail, when speaking of the money realized by the sale in Texas, says: "We held it in common and invested it in common as common stock, common money." No principle is better settled than that the addition or subtraction of a member from a firm, creates a new firm, and operates as the dissolution of the old firm, even though the business be continued under the old firm name. *Spaunhorst v. Link*, 46 Mo. 197; 1 Lindley on Part., [Wells' Ed.] *231, *392 and cas. cit.

Hence, nothing can be clearer, from the facts above stated, than that the firm of Vail Bros., conceding its existence in Illinois, expired when it underwent the successive mutations disclosed by the record. But apart from that, the new firm expired as already seen, in June

or July, 1881, and that it then owed no debts. Of course, after its dissolution, no power lay in the former partners to create any new indebtedness. The former partners must therefore, in any event, be regarded just as they appear on the face of the deed made them, as tenants in common of the realty conveyed to them, and not as partners therein, even within the purview of a court of equity. Under the provisions of Revised Statutes 1879, section 3949, the deed made them tenants in common, as much so, as if those very words were employed therein.

V. Besides, the attempt of the defendants was to fasten, by parol testimony, a resulting trust upon the property described in the deed, and by such testimony to change the *prima-facie* operation and effect of such deed, and make the property of tenants in common, partnership property: and as such chargeable with a partnership indebtedness. The burden was on them to do this. The rule in this court is settled by a uniform line of decisions that parol testimony, in order to accomplish such an object and secure such an end, must be clear, strong and unequivocal; so definite and positive as to leave no room for doubt in the mind of the chancellor, as to the existence of such a trust. *Johnson v. Quarles*, 46 Mo. 426 ; *Forrester v. Scoville*, 51 Mo. 268 ; *Ringo v. Richardson*, 53 Mo. 394 ; *Kennedy v. Kennedy*, 57 Mo. 73 ; *Modrell v. Riddle*, 82 Mo. 31 ; *Berry v. Hartzell*, 91 Mo. 132. The testimony in this case falls far short of the standard heretofore established. Indeed, it is impossible to read the testimony in this record, without being impressed with the idea that the theory of a partnership and a partnership indebtedness took its origin after the transcript from the justice of the peace was filed, and other complications began to surround those who now claim to have been partners at the time. The claim of the plaintiff is founded in justice, and the testimony shows that it is at least as much entitled to

the protection of a court of equity as the claim which was made the basis for its overthrow.

The judgment will be reversed and the cause remanded, with directions to proceed in conformity with this opinion. All concur. RAY, J., absent.