SWON v. STEVENS, *Appellant.*

Division Two, March 29, 1898.

1. **Ejectment:** EQUITABLE DEFENSE: PRACTICE. Where the answer in ejectment states an equitable defense and prays affirmative relief, the action is converted into a cause in equity and is triable on the chancery side of the court.

Swon v. Stevens.

2. ——: APPEALS: REVIEWABLE. The findings of the chancellor are reviewable by this court in equity cases.

3. Equity: APPEALS: APPELLATE PRACTICE. This court will not abdicate its supervisory control in equity cases, even where the evidence is oral; but where the evidence consists wholly or almost entirely of parol testimony, it will defer somewhat to the finding of the chancellor, unless there is some cogent reasons why his findings should not be accepted. But in cases in which the evidence consists of records, writings or depositions, this court will not defer to the findings of the chancellor. In this case, in which the evidence is almost wholly oral, the court does not concur with the findings of the trial judge.

4. Deed of Trust: PREMATURE SALE. Where plaintiff's evidence showed that he agreed to extend the time of paying a mortgage debt one year if the defendant would pay the interest within that time and the taxes, and he foreclosed the deed of trust within four or five months, on the ground that the taxes had not been paid, and the taxes were paid by defendant after the advertisement was begun but before sale, the sale will be held to have been premature and voidable.

5. ——: SETTING SALE ASIDE: STATUTE OF FRAUDS. Defendant owed a note of $5,800 secured by deed of trust to R., which plaintiff bought, and a judgment debt of $398.10 to Dillard which plaintiff paid off on condition that defendant would give him a second deed of trust to secure the $398.10 and another unsecured note for $346.66, and also on condition that plaintiff would give defendant five years in which to pay the debt of $5,800 and the second deed of trust. The agreement was not in writing, but within five months the plaintiff had the land sold under the first deed of trust and became the purchaser at the trustee's sale. *Held*, that, since defendant executed his note for the Dillard judgment and the unsecured debt to plaintiff, and gave him a second deed of trust on his homestead to secure the payment of the note as he had agreed to do, the contract was executed and the plea of the statute of frauds would not avail plaintiff. *Held*, also, that the sale under the deed of trust in palpable violation of the agreement, in plain disregard of the expressions of friendly disinterestedness paraded by plaintiff when he induced defendant to tie up his homestead, was oppressive and inequitable and without authority.

*Appeal from Callaway Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED (*with directions*).

*A. Finley* and *R. B. T. Oliver* for appellant.

(1)   The contract between appellant and respondent to extend the time for the payment of certain debts and for the foreclosing of deeds of trust securing the same for a period of five years, was for a valid consideration, legal and binding on the parties thereto.   2 Jones on Mort. [5 Ed.], secs. 1190, 1191; *Ins. Co. v. Bonnell*, 35 Ohio St. 365; *Thompkins v. Thompkins*, 21 N. J. Eq. 338; *West v. Brison*, 99 Mo. 684; *Semple v. Atkinson*, 64 Mo. 504.   (2)   Said contract does not come within the purview of the statutes of frauds and perjuries.   Its terms do not affect real estate or any interest in real estate in any way.   It only affects the debts by extending the time for payment and extending the time for the foreclosing of the deeds of trust securing the same.   *Turner v. Johnson*, 95 Mo. 431; *Brown v. Bowen*, 90 Mo. 184; *O'Fallon v. Clopton*, 89 Mo. 284; *Gillispie v. Stone*, 70 Mo. 505.   (3)   But if within the statutes of frauds and perjuries it was taken out by part performance; and by a memorandum of the contract, in writing, signed by the party to be charged. *Simons v. Headlee*, 94 Mo. 482; *Christensen v. Wooley*, 41 Mo. App. 53.   (4)   At the time of the sale of the lands by the trustee, no part of the debts under the contract was due, and there was no default in any of the conditions of the deeds of trust securing these debts, and for that reason the sale was void, the trustee having no power or authority to sell.   *Peas v. Iron Co.*, 49 Mo. 124; 2 Jones on Mort. [5 Ed.], sec. 1175; *Koehring v. Muemminghoff*, 61 Mo. 403; *Baldridge v. Dawson*, 39 Mo. App. 527; *Franders v. Barstow*, 18 Me. 357; *Baxter v. Spenser*, 33 Mich. 325.   (5)   The trustee having no power or authority to sell the lands at the time he did, his deed or deeds to purchasers conveyed no title.   *Long v. Long*, 79 Mo. 644; *Eitelgeorge v.*

*Bldg. Ass'n,* 69 Mo. 52; 2 Jones on Mort. [5 Ed.], sec. 1191.   (6) Appellant's presence at the sale and directing how the land should be sold does not estop him when he objected to the sale of the land and so announced at the time publicly.   (7)   This is an equity case and this court will try it *"de novo." Sims v. Lenhardt,* 127 Mo. 271; *Blount v. Spratt,* 113 Mo. 48.

*N. D. Thurmond* for respondent.

(1) The cause of action in this court is one at law. The defendant in his answer interposes, *first,* a general denial, and *secondly,* he sets up an equitable defense in the nature of a confession and avoidance.   The two defenses are inconsistent and contradictory.   Such a course of procedure is not allowed by the rules governing pleadings under the practice act.   *Darrett v. Donnelly,* 38 Mo. 492, and cases cited.   (2) This court will not review the finding of the lower court where no declarations of law are asked or given and there is nothing to show on what theory the court below acted in coming to its conclusions.   *Parkinson v. Caplinger,* 65 Mo. 290; *Harrison v. Bartlett,* 51 Mo. 170; *Wilson v. Railroad,* 46 Mo. 36.   (3) Judgments will not be disturbed simply because it appears to be against the weight of the evidence.   Nor will the Supreme Court pass upon the weight of the evidence, nor determine its credibility where it is conflicting, but will defer to the conclusions of the trial court having the witnesses before it.   *Rea v. Ferguson,* 72 Mo. 225; *Methudy v. Ross,* 81 Mo. 481; *Anderson v. Griffith,* 86 Mo. 549.   (4)   In a case like this it was incumbent on the defendant to prove to the satisfaction of the court, *first,* the existence of the agreement asserted in the answer; *second,* that through the contrivance or with the consent of the plaintiff such an agreement deterred others from

bidding; *third*, the actual market value of the land at the date of the sale and that the market value was greater than the price at which the land was sold. *Gillispie v. Stone*, 70 Mo. 505. (5) An agreement, after the maturity of a note, to extend the time of payment, is no bar to a foreclosure, before the expiration of the period of extension of the mortgage securing the note, the only remedy for violation of the agreement being an action for damages. *Ayers v. Hamilton*, 30 N. E. Rep. 895; *Vogel v. Harris*, 83 Ind. 494; *Williams v. Scott*, 83 Ind. 25; *Irons v. Woodfill*, 32 Ind. 40. (6) Under our statutes all contracts which directly or indirectly limit or tend to limit the time in which any suit or action may be instituted shall be null and void. R. S. 1889, sec. 2394. (7) The equitable defense set up in the answer and the remedy prayed for is an action concerning land, and can not be maintained unless the contract upon which the action is based was in writing and signed by the party to be charged therewith. R. S. 1889, sec. 5186.

GANTT, P. J.—This is an action of ejectment for the northwest quarter of the northeast quarter; ten acres, the north part of the southwest quarter of the northeast quarter (said tract extending across said southwest fourth northeast quarter); and thirty acres, the south part of the northwest quarter of the southeast quarter (north line parallel with south line of said northwest quarter of the southeast quarter), all in section 5, township 49, range 8, Callaway county. Ouster was laid March 2, 1895. The answer was as follows:

"Now on this day comes the defendant in the above entitled cause and for answer to plaintiff's petition filed herein denies each and every allegation in said petition, except as hereinafter specifically admitted

to be true.   Defendant admits that he was and is in the possession of and is now occupying the lands and premises described in plaintiff's petition.

"Defendant for other and for further answer to plaintiff's petition states that on the twentieth day of October, 1881, he was owner in fee and in posession of the following described land lying and being in Callaway county and State of Missouri, to wit: W. 1–2 of lots one and two of the N. W. qr. of section 4, also the N. E. qr., and the north 1–2 of S. E. qr., and the S. E. qr. of the N. W. qr. of section 5, all in Tp. 49, range 8.   That on the said last named date defendant made, executed and delivered his certain negotiable promissory note for $3,500, payable to the order of James Rickenbaugh, due and payable one year after date and bearing interest from date at the rate of eight per cent, compoundable; that to secure the payment of said promissory note, defendant and his wife, Harriet Stevens, executed and delivered their certain deed of trust of even date with said note, upon all the real estate above described to R. A. Crews, as trustee, to secure said note.   Defendant further states that payments were made on said promissory note by him and said note was kept alive and continued a subsisting obligation.   On the 24th day of September, 1894, there was due on said note, including principal and interest, about the sum of $5,800.   That on the last named date defendant was insolvent and was indebted to plaintiff, as security on a promissory note held by plaintiff and payable to his order, for the sum of $346.66, and that on the ——— day of August, 1894, one James D. Dillard obtained a judgment against this defendant in the circuit court of this (Callaway) county for the sum of $398.10, and that said judgment was unpaid on said date.   Defendant avers that plaintiff came to him and represented to and told this defendant that he (plaintiff) would take

up the Rickenbaugh note, and deeds of trust securing the same, and pay off the Dillard judgment mentioned above, if defendant would execute and deliver to plaintiff his promissory note for $756.21 (being the amount of the Dillard judgment and costs and the sum of defendant's indebtedness to plaintiff as security, as mentioned above), and secure the payment of said note for $756.21, by a second deed of trust from defendant and his wife, Harriet Stevens, upon all the lands and real estate heretofore mentioned; that he (plaintiff) would extend the time for the payment of the Rickenbaugh note and the deed of trust given to secure the same, and that he (plaintiff) would extend the time for the payment of the note for $756.21 and the deed of trust to secure the same, for a period of five years from the 24th day of September, 1894. Defendant states that believing and relying on the statements and representations of plaintiff, and having perfect faith and full confidence in the honor, honesty and integrity of plaintiff and believing that if plaintiff bought said promissory note from said Rickenbaugh and the said Dillard judgment, and if the indebtedness from defendant to plaintiff was secured by a second deed of trust from defendant and his wife upon all of the above described lands, the time for paying off said Rickenbaugh promissory note and the note for $756.21, so given, would be extended for a period of five years from the 24th day of September, 1894, and said lands would not be sold under said deeds of trust, or either of them, for a period of five years from the 24th day of September, 1894; that defendant, relying on said statements and promises made by plaintiff, and the fact that plaintiff did take up the Rickenbaugh note and pay off the Dillard judgment, was induced by said statements, acts and representations of plaintiff to execute and deliver his promissory note for

$756.21 on the 24th day of September, 1894, due five years after date and payable to plaintiff, or his order, and did on the same day secure said note by executing and delivering a second deed of trust from defendant and his wife, Harriet Stevens, upon all the lands described as aforesaid. Defendant further avers that said plaintiff, after having the indebtedness from defendant to him well secured as aforesaid, in utter disregard of his promises and representations to defendant, and in fraud of defendant's right, did cause said lands of defendant to be advertised and sold on the 20th day of February, 1895, under the deed of trust made to secure the said Rickenbaugh note. That at said sale W. J. and J. P. Kesler bought the NW. qr. of the NE. qr., and 10 acres, being the north part of the SW. qr. of the NE. qr., all in section 5, Tp. 49, R. 8; that thereafter W. H. Kesler and wife and J. P. Kesler and wife deeded said land to plaintiff. That at the said sale plaintiff bought the other lands described in his petition and received the trustee's deed for the same. Defendant avers that said sale was and is void; that, at the time of the sale of said lands by the trustee aforesaid, no part of said Rickenbaugh note, or the interest thereon, was due and unpaid. Wherefore defendant prays the court to declare the sale of said lands made by said R. A. Crews, as trustee, on the 20th day of February, 1895, null and void and of no effect; that the deed executed by R. A. Crews, as trustee, to the lands described in plaintiff's petition and deeded to W. H. Kesler and J. P. Kesler, and the deed from W. H. Kesler and wife and J. P. Kesler and wife to plaintiff by the deed to plaintiff by said trustee be canceled and for naught held; that plaintiff be restrained from selling said lands under said deeds of trust, or either of them, for the period of five years from the 24th day of September, 1894, and for such

other and·further orders as to this court may seem proper in the premises, and for his costs."

The plaintiff in reply to defendant's answer denied each allegation of new matter therein contained. Plaintiff, further replying, stated that said answer did not state sufficient facts to constitute a cause of action or defense herein; that there is no equity in said answer nor cause for equitable relief thereunder; that said pretended defense is barred by section 5186 of chapter 71, entitled "Frauds and Perjuries," of Revised Statutes of 1889, in that said pretended contract was for an interest in and concerning lands, was not to be performed within one year from the making thereof, and was not in writing and which said statute is hereby pleaded as a full and complete defense herein and bar to defendant's recovery herein; that defendant was present at, consented to, acquiesced in, and authorized the sale of the lands in controversy herein and is hereby estopped from making defense herein by reason thereof.

The case was then tried upon the issues joined in the pleadings by the court without a jury and judgment given for plaintiff from which defendant appeals.

I. In *Fisher v. Stevens, ante,* p. 181, it was held that the answer in that case, which in all material respects is the same as the answer in this case, stated a good equitable defense to the action of ejectment and that ruling is decisive of the sufficiency of this answer. Inasmuch as it also prays for affirmative relief, the cause was converted into a suit in equity and triable on the chancery side of the court. *Allen v. Logan,* 96 Mo. 591; *Wolff v. Schaeffer,* 74 Mo. 154; *Carter v. Prior,* 78 Mo. 222; *Kerstner v. Vorweg,* 130 Mo. 196; *O'Day v. Conn,* 131 Mo. 321; *Schuster v. Schuster,* 93 Mo. 443. Being an appeal in equity the findings of the trial court are open to review by this court.

The evidence on behalf of defendant tended very
strongly to sustain his allegations that plaintiff had an
unsecured debt against defendant and in order to pro-
tect himself from loss bought the Rickenbaugh mort-
gage and agreed to give defendant five years' time, if
he would give a second deed of trust to secure plaintiff.
This farm was encumbered by a deed of trust to secure
a note of $3,500 to James Rickenbaugh which amounted,
interest and principal, to about $5,800 on September
24, 1894.   In order to induce defendant to secure his
claim, plaintiff (according to his own evidence) said to
him that "he had *come to see if he could be of any assist-
ance to him*" and with that purpose in view he wanted
to see the land.   They drove over the farm together in
plaintiff's buggy and defendant disclosed to plaintiff
his financial condition.   At that time one Dillard had
recovered judgment against defendant and defendant
said to plaintiff: "If you can carry the Rickenbaugh
note and Dillard judgment I can manage the rest."
Mr. Thomas, the son-in-law of defendant, testified
that plaintiff came to his home in Aux Vasse on the
twenty-first day of September, 1894, and requested
him to go with him to see defendant, "*for he had con-
cluded to help the old man out of his difficulty if he could.*"
He stated that "Stevens owed him $340; that it was a
security debt and if Thomas would help him get Mr.
Stevens to include this debt in a mortgage, he could
take up the Rickenbaugh note and Dillard judgment
and try and carry him."   Thomas went with him to
defendant's house.   Defendant and plaintiff rode over
the farm and upon their return to Thomas, requested
him to figure for them and he estimated the indebted-
ness then amounted to something between $6,500 and
$6,700.   Plaintiff thereupon said: "If it is about what
I think it is I can carry the indebtedness."   They then
discussed the time plaintiff would give defendant and

"plaintiff reluctantly agreed to five years." Defendant told plaintiff that Dillard had agreed to give him one year but that would not include plaintiff's note and he (defendant) preferred Rickenbaugh should hold his note instead of Dillard. Thereupon plaintiff agreed that he would carry the debt for *five years provided* defendant would not let the note increase more than one year's interest." Defendant testified that plaintiff and Thomas came to his house September 21, 1894. "Mr. Swon, the plaintiff, said he had come to look over my place and '*see if he could do me any good.*' He said he 'had been talking with Rickenbaugh and wanted to see if he could take up his note and *he would give me my time on it.*' I went over the farm with him. After looking at the farm he said the farm was worth the money that was against it and the Dillard judgment. He agreed to take up the Rickenbaugh note and pay off the Dillard debt and carry me five years without selling me out if I would give him a second deed of trust to secure the $340 I owed him as surety for my son and pay the interest annually, and I agreed to do that. He first said he would cancel the Rickenbaugh note and take a new note and deed of trust for the whole amount. He left saying he would go to Fulton and see about it. I next saw him after he had been to Fulton and he said he preferred to have the Rickenbaugh note assigned to him, because Ben James had a small judgment against me and if he took a new note some of these things would come in ahead and it would be better for me for him to buy the old note, but he still agreed that if I would give a second deed of trust and pay the interest annually he would carry me for five years. We figured up the Dillard judgment and my unsecured debt to him and it amounted to $756 and I made my note for that amount and gave him a deed of trust on my home-

stead, on all of my land. I was insolvent then. My wife
joined in the deed of trust.   This new note was drawn
payable five years after date.   Defendant testified that
soon after executing this new deed of trust he was
astonished to learn that his farm was advertised for
sale on February 20, 1895.   He went to see plaintiff
and inquired what he meant and plaintiff said: '*You
have not paid the taxes.*'   I told him I would pay them
and I did pay them before the day of sale and went
and told him I had paid them, but he said I had no
business to do it, and if I thought I would stop the
sale by paying the taxes I was mistaken.   He was
angry because I had paid them.''   On the day of sale
defendant gave public notice that his note was not due
and of his arrangement with plaintiff extending it,
and that anyone who bought the land would buy a law
suit, but plaintiff proceeded and bought the portion
now in dispute in this action.

A careful reading of this record discloses no sub-
stantial conflict between the evidence of defendant
and Mr. Thomas, and the plaintiff Swon, *except* the
promise to carry the indebtedness *five years*.   Swon
testifies ''he agreed to carry it *one* year if Stevens could
keep the taxes paid, and pay the interest.''   He says:
''After I bought the Rickenbaugh note and *before he
gave me his second mortgage* I told him if he would not
allow the amount to grow and *would pay the taxes* (the
whole thing amounted to about $6,600) *I would try to
carry the debt for him.*''   He says he called the attention of
Stevens three times to the taxes and each time Stevens
said he would attend to them in time.   He says he
learned about January 16 that Stevens had not paid
the taxes and called his attention to it.   ''*I said to him
do you know what that means?   It means you must go
and pay those taxes.*''   He then ordered the land
advertised.   Stevens came and told him he had paid

the taxes. "I asked why he did it" and he said Mr. Finley told him to do so. "I said then it is all right." He says he told Stevens he could carry the debt a year. He says Stevens did not ask for five years time. He only asked till the spring of 1895. He says a short time after taking the new note he asked Stevens to deed his whole farm to him but Stevens refused to do it.

This court has often announced that in equity cases where the evidence consisted wholly or almost entirely of parol evidence it would defer somewhat to the finding of the chancellor, unless there was some cogent reason why we should not accept his findings (*Mathias v. O'Neill*, 94 Mo. 520), but in cases in which the evidence consists of records, writings, or depositions no such rule obtains. And on more than one occasion this court has declared even where the evidence is oral it will not abdicate its supervisory control in equity cases. *Benne v. Schnecko*, 100 Mo. 250. In this case we find ourselves unable to concur in the finding of the learned circuit judge who tried this case. It is admitted that the plaintiff sought out the defendant and had him show his farm upon the plea that "he might be of assistance to him," that "*he had come as his neighbor to help the old man out of his difficulty.*" By such representations as these he induced the old man to give him a detailed statement of his financial condition and to show him the farm. He then admits that he promised him that he would buy the Rickenbaugh note and carry it *a year* if the old man would give him a second deed of trust upon his home for his unsecured debt. It stands conceded that the old man did give him a new second deed of trust upon his homestead at a time when he was insolvent to secure this unsecured debt and defendant gave him five years on the new note. Both Mr. Thomas and defendant who stand wholly unimpeached save by the one contra-

diction of plaintiff as to the time he would carry
the debt, testify that plaintiff agreed to give defendant
five years time if he would pay the interest and taxes
annually. Plaintiff admits he agreed to carry him but
says it was only for one year. Defendant denies this
and says he told plaintiff that Dillard had offered to
give him a year but if that was all the time he was to
get he preferred Mr. Rickenbaugh should continue to
hold the note because he had been very kind to him
about the matter, but plaintiff even says that defend-
ant only wanted until spring. To us it seems so utterly
unreasonable that a man who knew he must look to
his farm to raise the money to pay interest and a six
thousand dollar mortgage would ask only for three or
four months extension in the winter, that we can not
credit plaintiff's story. It is incredible that old man
Stevens would have mortgaged the equity of redemp-
tion in his homestead in his old age, if as plaintiff says,
he was merely changing creditors for a few short months.
The evidence of defendant and Thomas is entirely con-
sonant with ordinary business sense and precaution,
and is strongly fortified by the record fact that plaintiff
did extend the time on the new note for five years.
Plaintiff's testimony is wholly inconsistent with his
*professed object* of intermeddling in the affairs of
defendant. He said *"he had come to assist him,"* *"to
help the old man out of his difficulty."* What help was
there in obtaining a second mortgage on his equity of
redemption *without staying the time for foreclosure on the
principal debt?* If plaintiff is correct then defendant vol-
untarily gave a second deed of trust in which his wife
joined and relinquished her dower to secure on this
homestead an unsecured debt without obtaining any
consideration therefor, and thus deprived themselves
of the poor privilege of endeavoring to get the large
mortgage extended by giving a new deed of trust with

this equity of redemption as a bonus to the new mortgagee. Such a story is too unreasonable. The great preponderance of the evidence corroborates the evidence of defendant. That he was to have such time is not at all unreasonable. It was a loan on property well worth the money and interest *and was bearing eight per cent compound interest*. Even under this forced and premature sale the land brought the mortgage and left eighty acres with the improvements unsold.

We think the evidence sustains the contention of defendant and that the learned circuit court erred in not so finding. Moreover it is plain that plaintiff's own evidence proves that this foreclosure was premature. He admits he gave defendant *a year* and yet we find him in about three months availing himself of the flimsy pretense that Stevens had not paid his taxes *to declare a forfeiture*, and refusing to stop the sale after he knew the taxes had been paid prior to his sale. When the taxes were paid all ground of foreclosure was removed if any had ever existed. *Whelan v. Reilly*, 61 Mo. 565; *Philips v. Bailey*, 82 Mo. 639.

There is no force in the plea of the statute of frauds. When defendant executed his note for the Dillard judgment and the unsecured debt to plaintiff and gave him a second deed of trust on his homestead as he had agreed to do, it was an executed contract and the statute of frauds had nothing to do with the matter. The attempt to plead and establish an estoppel were equally abortive. The essentials of an estoppel *in pais* are nowhere stated in the reply and are not sustained by the evidence. *Berlien v. Bieler*, 96 Mo. *loc. cit.* 495. Finally the conduct of plaintiff was oppressive and inequitable. The sale under the deed of trust was in palpable violation of his agreement, in plain disregard of the expression of friendly disinterestedness which he plausibly paraded

when he was inducing defendant to tie up his equity of redemption in his homestead to secure his unsecured debt.   The sale was wholly without authority after the taxes were paid, the nonpayment of which constituted the only pretext for a breach of his agreement to carry the debt.   It follows the judgment of the circuit court is reversed and the cause remanded with directions to enter a decree setting aside the sale of the land in suit by the trustee to plaintiff and also the trustee's deeds to this land to W. H. and J. P. Kesler and to decree that the deeds of said Kesler to plaintiff were void and conveyed no title to plaintiff and to take an accounting between plaintiff and defendant with respect to the interest and taxes that may be due and require the same to be paid within a reasonable time to be fixed by the court and if so paid to restrain a sale under said deed of trust until the expiration of said five years unless defendant violates the conditions of said trust deed in failing to pay said taxes and interest annually in the future.   SHERWOOD and BURGESS, JJ., concur.