Lincoln Trust Co. v. Nathan.

---

## LINCOLN TRUST COMPANY et al., Appellants, v. NATHAN et al.

### Division One, May 27, 1903.

1. **Appellate Jurisdiction:** DEMAND FOR JURY TRIAL: DENIAL. A request for a jury in a suit for rent growing out of a lease contract, and a denial thereof, give the Supreme Court jurisdiction over the appeal.

2. **Trial by Jury:** LEASE: EQUITABLE DEFENSE. There is a difference between a mere equitable defense to a suit on contract, and a cross-bill in equity asking for affirmative relief, which, if granted, destroys the plaintiff's case. In the latter case the answer and cross-bill convert the case into one in equity, and a trial by jury should be denied.

3. **Lease:** FIRE: TERMINATION. In spite of the harshness of the rule, this court, because it has become so firmly fixed in the law, holds that where there is nothing in the contract to the contrary the lessee must pay subsequent installments of rent in case the premises are destroyed by fire or storm.

Lincoln Trust Co. v. Nathan.

4. ———: RESCISSION: FORFEITURE. A court of equity will declare a rescission of a contract for a violation of the covenants therein contained, when it would be against conscience to permit one party to violate the contract on his part and still hold the other party to a compliance with it. This is not the forfeiture which is meant when it is said that courts of equity do not favor forfeitures nor lend their aid to declare or to enforce them.

5. ———: FIRE: AGREEMENT TO REBUILD: DEPENDENT COVENANTS. If the covenants to pay rent and to rebuild in case of fire are dependent upon each other, then, if the lessor does not rebuild, the lessee is not only entitled to be relieved from the payment of any subsequent rents, but to recover by his cross-bill whatever rents he has paid in reliance upon the lessor's covenant to rebuild, and to have the lease cancelled.

6. ———: ———: ———: ———: CASE STATED. The lessee agreed to pay $600 a month rent during the continuance of the term of the lease, which was one year, and it was agreed that if the building were either partially or wholly destroyed by fire, the lessor should repair or rebuild a similar building within a reasonable time, "and have it ready for occupancy as soon as possible after its destruction," and the lessee agreed that in consideration of the erection of such new building and of its delivery for occupancy to him for the unexpired term of the lease, he would pay the rent "for the period of the erection of such new building," or in case of only a partial destruction he would pay the rent during "the time of the repairing of such demised premises." *Held*, that these covenants of the lease were dependent, and the building having been destroyed by fire and the lessor having failed to rebuild within a reasonable time, the lessee is not chargeable with any rents after the fire, and having paid them for two months he is, in the suit by the lessor for the rents for other subsequent months, entitled, by his cross-bill, to have the lease cancelled and to judgment for the two months' rent paid.

7. ———: ———: ———: PERFORMANCE WITHIN REASONABLE TIME. Where the covenants to pay rent and to rebuild in case of fire are dependent, the lessor is entitled to a reasonable time after the fire in which to rebuild, and in this case it is held that a completion of the building within eight months was not within a reasonable time.

8. ———: ———: RENTS PAID: VOLUNTARY. In a suit by the lessor for unpaid rents, to which the lessee answers by an equitable cross-bill asking for a return of rents paid, the court can compel the lessor to return rents paid him after the fire which he is not in

good conscience entitled to retain, and in such case the lessor can not retain them on the ground that their payment was voluntary.

9. ———: ———: IMPROVEMENTS: INSURANCE: JUDGMENT RESPONSIVE TO PLEADING. By the terms of the lease the lessee was to put in an elevator, boiler and a lighting and heating plant, and to keep them insured, and if the building was destroyed by fire the lessor was to have this insurance money. *Held*, that there being nothing in the pleadings in regard to this matter, plaintiffs in a suit for unpaid rents can not recover the insurance money, even though the case has been converted to one in equity by the affirmative defense set up in the answer.

10. ———: ———: INSURANCE AGAINST LOSS OF RENT. The lessor is not entitled to recover from the lessee money which he has received under a contract of insurance indemnifying him against loss of rent by fire, whether or not the lessee has sustained any such loss.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

AFFIRMED.

*George W. Lubke* for appellants.

(1) The trial court erred in denying plaintiff's request for a jury trial, and the exception to that ruling presents a constitutional question for the final determination of the Supreme Court. Section 17, article 1, Constitution 1865, was amended when the Constitution now in force was adopted, August 2, 1875, so that it now reads: "The right of trial by jury, as heretofore enjoyed, shall remain inviolate; but a jury for the trial of criminal or civil cases in courts not of record may consist of less than twelve men, as may be prescribed by law." Sec. 28, art. 1, Const. 1875. The practice act, enacted by the General Assembly in 1849, provided as to trials in civil cases that: "An issue of fact in an action for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived or a reference ordered, as hereinafter provided." R. S. 1855, sec. 12, p. 1261. And this language has, without change, remained a part

of the statute law of the State ever since. R. S. 1865, sec. 12, p. 673; R. S. 1879, sec. 3600, p. 616; R. S. 1889, sec. 2131; R. S. 1899, sec. 691; Rogan v. McCay, 29 Mo. 356; Ellis v. Krutzinger, 31 Mo. 432; Kitchen v. Railroad, 59 Mo. 514; Vaughan v. Scade, 30 Mo. 600; Brown v. Railroad, 37 Mo. 298; Batterton v. Sims, 73 Mo. App. 351; Wolff v. Schaeffer, 4 Mo. App. 367; s. c., 74 Mo. 154. The test of a right of trial by jury is the action, and not the defense, or the issues; held, that the interposition of an equitable defense, with a prayer for the reformation of the contract in issue, could not deprive plaintiffs of their right to a jury. Smith v. St. Louis Beef Canning Co., 14 Mo. App. 522. The petition determines the character of the action. Joyce v. Monaghan, 17 Mo. App. 11. In an action for rent under a written lease, the defendant pleaded a counterclaim and an equitable defense, upon which he based a prayer for the cancellation of the lease. The defendant demanded a jury, which the court denied; and, on appeal, the judgment was reversed, the appellate court stating: "The mere fact that the answer concluded with the prayer for cancellation of the lease can make no difference. That was not the main relief asked by the defendant, but mere ancillary relief, which the court could have rejected as surplusage. It results from the foregoing that the judgment must be reversed for error in denying the defendant the right of a jury trial." Rand v. Wickham, 60 Mo. App. 44; Grayson v. Weddle, 80 Mo. 39; Willis v. Barron, 143 Mo. 450; Miller v. Railroad, 162 Mo. 424; Schuermann v. Life Ins. Co., 165 Mo. 643; Kern v. Supreme Council, 67 S. W. 252; State ex rel. v. Withrow, 133 Mo. 500; State v. Hamey, 168 Mo. 167.

(2) The fire did not terminate the lease or respondents' obligation to pay the rent sued for. Davis v. Smith, 15 Mo. 468; Burnes v. Fuchs, 28 Mo. App. 279; Peterson v. Smart, 70 Mo. 34; O'Neil v. Flanagan, 64 Mo. App. 57; Taylor on Landlord and Tenant (7 Ed.), secs. 369-375. The covenant of respondents to pay

these rents was independent of appellants' covenant to rebuild as speedily as possible; and the respondents, upon a proper showing, could be compensated in damages for appellants' unnecessary delay, if there was such. Freeland v. Mitchell, 8 Mo. 488; Turner v. Mellier, 59 Mo. 526; Sawyer v. Christian, 40 Mo. App. 295; O'Neil v. Webb, 78 Mo. App. 1; Larimore v. Tyler, 88 Mo. 667; Taylor on Landlord and Tenant (7 Ed.), sec. 331; Tibbetts v. Percy, 24 Barb. 39; Ellis v. McCormick, 1 Hilton 313; Watts v. Coffin, 11 Johns. 495; Speckles v. Sax, 1 E. D. Smith 253. This was the rule of the common law. Belfour v. Weston, 1 Term 310; Hare v. Groves, 3 Anst. Respondents, by their conduct in endeavoring to repudiate the lease so soon as they had their property out of the debris, waived compliance by appellants with the covenant to promptly rebuild. Miller v. Benton, 55 Conn. 548. (3) The rent paid appellants was paid voluntarily, and whether the consideration therefor was adequate or not is immaterial. Claflin v. McDonough, 33 Mo. 415. There was no eviction; on the contrary, the lessees had the use of the premises to get out their burnt stock and other property during all of February and March. Where the eviction is not complete the liability for rent continues. Taylor on Landlord and Tenant (7 Ed.), sec. 380; McFadin v. Rippe, 8 Mo. 738; Witte v. Quinn, 38 Mo. App. 681. The removal of a tenant and surrender of the key does not terminate the liability for rent, unless it is so agreed by the lessor. Prentis v. Warn, 10 Mo. 601; Livermore v. Eddy, 33 Mo. 547; Heine v. Morrison, 13 Mo. App. 590. (4) Respondents had an adequate remedy at law, and it was not necessary for appellants to set this up in their reply. Humphrey v. Atlantic Milling Co., 98 Mo. 542. The affirmative matter pleaded by respondents went directly to the question whether respondents were legally liable for the rent claimed in the petition, and thus constituted a legal defense. It also constituted a "plain and concise statement of the facts" constituting

respondents' cause of action by way of legal counter-claim. And in later actions for subsequent rents, the respondents would have the same adequate remedy at law by way of defense to appellants' legal demands. Respondents prayed a forfeiture which the law never favors and courts of equity never declare. Froehlich v. Ins. Co., 47 Mo. 406; McCollum v. Fire Ins. Co., 61 Mo. App. 352; Heman v. Wade, 140 Mo. 1; Taylor v. Carondelet, 22 Mo. 105; Bispham's Principles of Equity (3 Ed.), p. 238; Messersmith v. Messersmith, 22 Mo. 369; Sease v. Stove Co., 141 Mo. 488; Railroad v. Railroad, 7 P. F. Smith 65. Even if contract stipulates for a forfeiture and fixes the time, courts of equity will treat the time specified as not of the essence of the contract. O'Fallon v. Kinnerly, 45 Mo. 124; Mastin v. Grime, 88 Mo. 478; Rives v. Toulman, 25 Ala. 452. (5) Respondents seeking equity should do equity. They recovered $4,000 from the insurance companies for the fixtures, which became a part of the leased premises and which they agreed to keep insured; they also received $3,000 from the insurance companies for rents, on the theory that they had lost them; and they used the leased premises for their burnt stock and property the better part of two months after the fire. They kept the $7,000, repudiated the lease, and then sought to recover back the two months' rent. He who seeks equity must do equity, be he plaintiff or defendant. Bispham's Prin. Equity (3 Ed.), sec. 43, p. 62; Och v. Railroad, 130 Mo. 48; Hancock v. Blackwell, 139 Mo. 458; North v. Stevenson, 71 Mo. App. 427; Jenkins v. Ins. Co., 79 Mo. App. 55. Respondents were constructive trustees with respect to the insurance upon the fixtures. Bispham, sec. 91, p. 132, and sec. 92, p. 133.

*R. E. Rombauer* and *M. B. Jonas* for respondents.

(1) The entire case was triable in equity. After the admission made by the defendants upon the trial

and entered of record there was no legal issue left. The defendants asked for strictly equitable relief, namely the cancellation of the instrument which was the foundation of the plaintiffs' cause of action. If they failed to obtain such relief, the court was authorized to enter judgment for plaintiffs upon the defendants' admissions of record, and no resort to a jury was either necessary or admissible. Bispham's Principles of Equity, sec. 37; Hamilton v. Cummings, 1 Johns. Chy. 522; Park v. Bank, 31 Mo. App. 12, 97 Mo. 132; Swan v. Stevens, 143 Mo. 384; Dunn v. McCoy, 150 Mo. 548; Courtney v. Blackwell, 150 Mo. 245; Martin v. Turnbaugh, 153 Mo. 184; Beland v. Brewing Association, 157 Mo. 593; Miller v. Railroad, 162 Mo. 434; Baldwin v. Dalton, 168 Mo. 25. (2) The plaintiffs' re-erection of the building destroyed, as soon as possible, and on the outside within a reasonable time, was a covenant on the faithful compliance with which by the plaintiffs the defendants' covenant to pay rent during the period of the re-erection and after the completion of the building was dependent. Freeland v. Mitchell's Admr., 8 Mo. 488; Wellman's Admr. v. Dismukes, 42 Mo. 105; Mecum v. Railroad, 21 Ill. 533; Stansbury v. Fringer, 11 Gill. & Johns. 149; Hamilton v. Thrall, 7 Neb. 210; Robinson v. Harbour, 42 Miss. 796; Clayton v. Blake, 4 Iredell (N. C.) 497; Cunningham v. Morrell, 10 Johns. 203; Bank v. Hagner, 26 U. S. 455; Miller v. Benton, 55 Conn. 529. (3) The issues to be passed upon in any case are determined by the pleadings, and not by evidence which is not within the pleadings. This is the rule whether the proceedings are at law or in equity. Andrews v. Lynch, 27 Mo. 167; Staley H. F. Co. v. Wallace, 21 Mo. App. 128; Needles v. Ford, 167 Mo. 495. (4) While the appellate court is not concluded by the findings of the trial court in equity cases, it usually defers to such findings where the evidence is conflicting and the testimony is oral. Springer v. Kleinsorge, 83 Mo. 159; Bushong v. Taylor, 82 Mo. 660; Berry v. Hartzell, 91 Mo. 138;

Mathias v. O'Neil, 94 Mo. 520; Taliafero v. Evans, 160 Mo. 390; Dunivan v. Dunivan, 157 Mo. 157.

MARSHALL, J.—This is an action, begun May 5, 1900, by the trustees under the will of Joseph J. Mersman, deceased, to recover from the defendants, H. J. and Isaac Nathan, lessees, and the People's House Furnishing Company, a corporation, assignee of the lessees, the sum of twelve hundred dollars rent for the premises numbered 814 and 816 North Broadway, St. Louis, for the months of April and May, 1900.

The answer admits the incorporation of the trust company, and of the People's House Furnishing Company, and denies generally all the other allegations of the petition. By way of cross-bill the defendants then allege that on December 29, 1892, the then trustees under the Mersman will leased to H. J. and Isaac Nathan the premises aforesaid for a term of ten years, at an annual rental of $7,200, payable in monthly installments of six hundred dollars; that said lease contained the following clause:

"It is agreed by the said parties hereto that if the building hereby demised and leased shall be either partially or wholly destroyed by fire or other casualty during the term of this lease, the said parties of the first part, or their successors, shall repair or rebuild the same within a reasonable time after said partial or entire destruction, and in case it becomes necessary to erect a new building by reason of the entire destruction of said leased building, then said new building shall be of the size, dimensions, strength and arrangement of the present leased building, and the said parties of the first part, or their successors, covenant to and with the said parties of the second part, their heirs and assigns, to erect said new building immediately after the destruction of the present leased building, and under the superintendence and direction of said parties of the second part, their heirs or assigns; and said parties of the first

part, or their successors, covenant and agree to have said new building completed and ready for occupancy by said parties of the second part, their heirs and assigns, as soon as possible after the destruction of the present leased building; and in consideration of the erection of said new building, should the same be erected as aforesaid, and in further consideration of delivery of said new building for occupancy to said parties of the second part, or to their heirs and assigns, for the unexpired term of this lease, the said parties of the second part and their heirs and assigns, agree to and with said parties of the first part, and their successors, to pay to the latter the rent as above reserved for the period of the erection of said new buildings.''

It is then alleged that the Nathans assigned the lease to the People's House Furnishing Company, as they had a right to do under the lease, both lessees and assignee being liable for the rent, however; that the premises were totally destroyed by accidental fire on February 4, 1900; that plaintiffs violated their contract to erect a new building immediately after the destruction of the leased building, and to complete the same and have it ready for occupancy as soon as possible after its construction; that although four months had elapsed since the destruction of the leased premises, which is averred to be more than a reasonable time in which to erect a new building in place of the burned one, the plaintiffs had done substantially nothing looking towards the erection of a new building and had not even commenced the erection of a new building; that said covenant to rebuild went to the entire consideration of said lease, and on which all of the covenants of the defendants depended; that, as plaintiffs well knew, the defendants are retail merchants, and that plaintiffs' wrongful conduct deprived defendants of a suitable place for carrying on their business, and that the defendants were forced to make permanent arrangements

for other premises. The defendants therefore prayed a decree cancelling said lease.

The answer and cross-bill of the People's House Furnishing Company contains substantially the same general averments, and then alleges that it paid to the plaintiffs the rent for the months of February and March, 1900, that for March being paid in consideration that the plaintiffs would erect a new building as soon as possible, and then concludes with a prayer for judgment for $1,120, being the $600 rent for March, and the $600 rent for February less the rent for the first four days thereof.

The reply was a general denial.

The case came on for trial on October 22, 1900, and the plaintiffs demanded a trial by jury, which the court denied, and the plaintiffs duly excepted. Hence the appeal to and jurisdiction of this court.

At the request of both parties the court made a special finding of facts, and stated its conclusions of law separately, the finding and judgment being in favor of the defendants, decreeing a cancellation of the lease and a judgment for the People's House Furnishing Company for $1,169 on account of the rent paid for February and March, and interest thereon. After proper steps the plaintiffs appealed. The facts shown upon the trial will be stated in the course of the opinion.

## I.

The first error assigned is the denial of a trial by jury.

The plaintiffs contend that the suit is an action at law for two months' rent, and that the equitable defenses in the answer can not convert the case into one in equity, but that the utmost effect that such defenses could have would be to require the court to hear the equitable defenses first, and then to proceed with the case at law.

... . The infirmity underlying this position is that the answer does not simply interpose an equitable defense, but it is a cross-bill in equity, asking affirmative relief, which if granted, as it was, would cut out the foundations upon which the plaintiffs' right to recover depended, and therefore destroyed the plaintiffs' case. This accentuates the difference between a mere equitable defense and a cross-bill in equity asking affirmative relief, which, if granted, destroys the plaintiffs case. This being true, the answer and cross-bill converted this case into one in equity, and a trial by jury was properly denied. [Allen v. Logan, 96 Mo. 591; Swon v. Stevens, 143 Mo. 384; Dunn v. McCoy, 150 Mo. 548; Courtney v. Blackwell, 150 Mo. 245; Martin v. Turnbaugh, 153 Mo. 172; Beland v. Brewing Association, 157 Mo. 593; Baldwin v. Dalton, 168 Mo. 20.]

## II.

The plaintiffs' second contention is that the fire did not terminate the lease or relieve the defendants of their obligation to pay the rent; that the covenant of the defendants to pay rent and the covenant of the plaintiffs to rebuild as speedily as possible, are independent covenants, and that in a suit to recover the rent, the defendants can not be heard to defend on the ground that the plaintiffs had violated their covenant to rebuild, nor can any damage the defendant may have suffered in consequence of a failure to rebuild be set off against the rent, but that if the plaintiffs have violated their covenant to rebuild, the defendants' damages are measurable and can be recovered only in a direct action at law therefor, and that a court of equity never lends its aid to declare or enforce a forfeiture.

It is true that the fire did not, *ex vi termini,* terminate the lease. It is also equally true that the destruction of the leased premises does not as a matter of law

terminate the lease or relieve the lessee from his obligation to pay the rent.   This is put on the ground that the right to recover the rent rests upon the contract of the lessee to pay it, and not upon the enjoyment of the possession, and that this obligation is absolute and can only be avoided by the insertion of a proper clause in the lease, relieving the lessee from the payment of subsequent installments of rent in case the premises are destroyed, and in the absence of such a provision the lessee must pay the rent even if the premises are destroyed by the act of God or of the public enemy, or by any cause except an act of the lessor himself which amounts to an eviction.   This has been the rule of law so long that it were idle to attempt to change it now, but it may be doubted if it is a reasonable or humane rule, or a rule that can be reconciled with other equally well-settled rules of law.   For it may be said that the consideration to the tenant to pay the rent was based upon the benefits flowing from the occupancy and enjoyment of the premises, and that if he never got possession or if the premises were destroyed or became untenantable, the consideration for the promise to pay the rent failed.   And it might well have been held that both parties understood and intended the contract to mean this, and that neither intended that the contract should be binding upon the other if he was prevented from carrying it out by the act of God or the public enemy.   This is the common sense of such a contract.   But the trouble is the law as it stands and is enforced to-day in such cases, comes to us from a system and a time when the lords of the realm were accorded all possible advantages over the terre-tenants.   For myself I do not hesitate to say that it would have been better, and wiser and more humane, and more conscionable, if no such harsh rule had ever been permitted to find a resting place in the jurisprudence of a free people.   But it would be almost a herculean and possibly an impossible attempt to change it now.   The rule may be found stated in

Taylor on Landlord and Tenant (7 Ed.), secs. 369, 375 and 331. Some States have refused to follow such a rule, upon much the same grounds as here expressed. [7 Am. and Eng. Ency. Law (2 Ed.), p. 147.]

But it must be observed that the defendants did not dispute this rule, nor did the court below proceed in contravention of it. So that nothing further need be said of it in this case.

Neither do defendants question the rule that equity never lends its aid to declare or enforce a forfeiture, and that rule is not properly in this case.

The cross-bill and the judgment rest upon the well-known rule of equity jurisprudence, that a court of equity will, in a proper case, declare a rescission of a contract for a violation of the covenants therein contained, because it would be against conscience to permit one party to violate the contract on his part and still hold the other party to a compliance with it. This is very different, however, from a forfeiture, such as is meant when it is said a court of equity does not favor forfeitures nor lend its aid to declare or enforce them.

The pivotal legal question in this case is, whether the covenants to pay rent and to rebuild are dependent covenants, for if they are and if the plaintiffs did not comply with their covenant to rebuild, the defendants are not only entitled to be relieved from the payment of the two months' rent sued for herein but are entitled to be relieved from the whole obligation of the lease and to have the lease cancelled.

The two covenants in question are respectively as follows: The covenant of the plaintiffs to rebuild is:

"It is agreed by the said parties hereto that if the building hereby demised and leased shall be either partially or wholly destroyed by fire or other casualty during the term of this lease, the said parties of the first part or their successors shall repair or rebuild the same within a reasonable time after such partial or entire destruction, and in case it becomes necessary to erect

a new building by reason of the entire destruction of the said leased building, then such new building shall be of the size, dimensions, strength and arrangement of the present leased building, and the said parties of the first part, or their successors, covenant to and with said parties of the second part, their heirs and assigns, to erect said new building immediately after the destruction of the present leased building and under the superintendence and direction of said parties of the second part, their heirs or assigns. And said parties of the first part or their successors covenant and agree to have said new building completed and ready for occupancy by said parties of the second part, their heirs and assigns, as soon as possible after the destruction of the present leased building."

The covenant of the defendants to pay rent after the premises may be destroyed is:

"And in consideration of the erection of such new building should the same be erected as aforesaid, and in further consideration of the delivery of said new building for occupancy to said parties of the second part, or to their heirs or assigns, for the unexpired term of this lease, the said parties of the second part and their heirs and assigns agree to and with said parties of the first part and their successors to pay to the latter the rent as above reserved for the period of the erection of said new building; and said parties of the second part, their heirs and assigns, further agree to and with said parties of the first part and their successors to pay unto the latter during the period of any repairing of the present demised premises, necessitated by a partial destruction thereof as aforesaid, the rent as above reserved during the term of the repairing of said demised building."

The general agreement of the defendants to pay rent is as follows: "The said parties of the second part further agree to pay unto said parties of the first part as rent for said premises, during the continuance of the term of this lease, the sum of seventy-two hun-

dollars per annum, in monthly installments of six hundred dollars, payable in advance," etc.

The general rules of law applicable to the determination of the question of whether covenants in a lease are dependent or independent is well stated in 18 Am. and Eng. Ency. Law (2 Ed.), p. 619, as follows:

"Whether covenants and agreements in leases on the part of the lessor and lessee are to be construed as dependent or independent depends upon the fair intention of the parties to be collected from the lease, and technical words should give way to that intention; and the courts should lean to a construction which holds the covenants independent rather than dependent, especially when some benefit has already been derived by the covenantor. Where a covenant goes only to a part of the consideration on both sides, and a breach of such covenant may be compensated for in damages, it is generally considered independent. Where the covenants are independent, each party may sue upon the covenant of the other, without reference to whether he has performed his own covenant, whereas if the covenants are dependent the performance by each of his own covenant is a condition precedent to his right to recover on the covenant of the other party. The covenant on the part of the lessor is independent of the lessee's covenant to pay rent or keep in repair. So also the covenant of the landlord to repair or make improvements, and of the lessee to pay rent, are independent. It has likewise been held that the covenant of the lessee to pay rent, and the covenant of the lessor to board the lessee, were independent, as were also the covenant to pay rent and the lessor's covenant to heat the premises. The covenant of the lessor to give possession and of the lessee to pay rent are, however, dependent; but if the lessee enters into possession of a part of the demised premises, he will be deemed to have waived the full performance of the lessor's covenant to give possession, so as to entitle the lessor to recover a pro rata rent."

But where there is a penalty prescribed for a violation of covenants they will be construed to be independent, and the party wronged will be reverted to the collection of the penalty. [Freeland v. Mitchell, 8 Mo. 488.]

In all cases, however, the question must be decided "according to the intention and meaning of the parties, and the good sense of the case," as Judge NAPTON said in Freeland v. Mitchell, supra, or it must "be determined in each particular case by inferring, with as much certainty as possible, the meaning and purpose of the parties; from a full survey, the rational interpretation of the whole contract," as Judge WAGNER said in Wellman's Admr. v. Dismukes, 42 Mo. l. c. 105.

Applying these rules to the case at bar the solution of this case is easy. The general agreement of the defendants was to pay six hundred dollars a month rent for the premises, during the continuance of the term of the lease, which expired December 31, 1902. If this had been all that was said about the payment of rent, the doctrine invoked by the plaintiffs would apply, and under the harsh rule aforesaid, the plaintiffs would be entitled to recover the rent for the whole term, even if the premises were destroyed by the act of God the next day after the lease was executed.

But this is not all that the lease said about the payment of rent. The parties evidently considered the possibility of the premises being destroyed by fire or other casualty, before the expiration of the term, and they evidently knew that unless they put into the lease some qualification upon the absolute liability to pay six hundred dollars a month rent during the whole term, the rule of law relied on now by the plaintiffs would be invoked, and they would have to pay rent even if the premises were destroyed. They did not insert the usual fire-clause in the lease, that if the premises were destroyed by fire the rent should cease until the buildings were rebuilt, and if the lessor did not elect to rebuild

the lease should become void, but instead thereof it was agreed that if the building was either partially or wholly destroyed by fire or other casualty, the lessor should repair or rebuild a similar building within a reasonable time "and have it ready for occupancy" by the lessees "as soon as possible after the destruction," etc., and then in the same paragraph of the lease, and separated from the said covenant of the lessors to rebuild by only a semicolon, the lessees agreed that in consideration of the erection of such new building and of its delivery for occupancy to the lessees, for the unexpired term of the lease, the lessees agreed to pay the rent "for the period of the erection of said new building," or in case of only a partial destruction to pay the rent during "the term of the repairing of said demised premises."

Thus the consideration to the lessees to pay the rent during the time the building was not fit for occupancy by reason of partial or total destruction, was the covenant of the lessors to repair or rebuild the building "within a reasonable time" and deliver the same to the lessees for occupancy "as soon as possible after the destruction," etc.

The purpose of these covenants is manifest. It entitled the lessor to six hundred dollars a month rent for his premises while the building was untenantable, provided he repaired or rebuilt it within a reasonable time, and it entitled the lessee to the right to have his business continued at the same stand after the rebuilding of the premises, provided he paid the rent during the time the building could not be used or the premises enjoyed.

The object of putting such covenants in the lease was clearly to limit the otherwise absolute liability of the lessees to pay the rent during the whole term, even if the building was destroyed, and to bring themselves within the requirements of the rule invoked by plaintiff to avoid such absolute liability.

The character of the two covenants can not be doubted. They constitute parts of the same paragraph, and are separated only by a semicolon in the lease. They constitute the parts which go to make up the respective and mutual obligation of the contracting parties. The obligation of the lessors to rebuild is stated first, and the performance is required as a primary and precedent duty to any liability on the lessees' part, and the lessees' obligation to pay rent during such time is based upon the express consideration that the premises shall be rebuilt in a reasonable time and the lessees put into occupancy as soon as possible. The covenants are, therefore, as clearly dependent as if they had been declared to be so in so many words, and the lessees' liability to pay the rent depends upon the prior liability of the lessors to rebuild.

### III.

This leaves only the question of fact as to whether the lessors rebuilt the premises within a reasonable time.

The building was destroyed on February 3, 1900. This suit was begun on May 5, 1900. The permit for the erection of the new building was not issued until June 11, 1900. The new bulding was not completed and tendered to the defendant until October 2, 1900. Between the date of the fire and the institution of this suit, the lessors had done nothing but enter into a contract, on March 22, for the removal of the debris, which was completed on April 7th, and made a new agreement with the Hamilton heirs for a new party-wall between their respective premises.

The evidence for the defendants tends to show that the premises could have been cleaned up and a new building erected, within four and a half months after the fire. In fact it was not completed until eight months,

Vol 175 mo—4.

less two days, after the fire. The evidence for the plain-
tiffs shows that they had the work done as rapidly as
they could, but that they were delayed in getting the
insurance adjusted, and in getting the adjoining owners
to enter into new agreements as to party-walls which
had to be built, because under the new building ordi-
nances of the city the old party-walls could not be used.
But how much time all this took is not shown. The new
party-wall agreements were dated May 3d, 8th, and
12th, but it is not shown how much of the time between
February 4th and those dates was consumed in getting
the parties to agree.

The defendants also showed how many men were
employed from time to time on the work and on how
many days no work was done.

Upon the face of the record, therefore, the pre-
ponderance of the evidence supports the finding of the
lower court that the lessors did not rebuild within a
reasonable time, and that in consequence thereof the de-
fendants were obliged to lease another building in which
to carry on their business, first, for six months, and
afterwards, for a term of four and a half years.

The trial court entered a decree cancelling the lease
because of the plaintiffs' failure to comply with the cov-
enant to rebuild, and that decree was right and will not
be disturbed.

## IV.

But the plaintiffs contend that the defendants must
do equity if they ask equity, and that before they can
have a rescission of the contract they must turn over to
the plaintiffs the sum of four thousand dollars they re-
ceived from the insurance on the elevator, boiler, light-
ing and heating plant, which they were required by the
lease to put into the building and to keep insured for
that sum, and which was to become the property of the
lessors at the termination of the lease, or if the build-

ing was destroyed, the lessors were to have the insur-- ance; and also to turn over to the plaintiffs the sum of three thousand dollars which the lessees had collected from the insurance company on account of a policy against loss of rent in case of a destruction of the building.

Neither of these contentions is tenable in this case. The first, because no such issue is raised by the pleadings in the case, and therefore the rights of the parties to the four thousand dollars insurance could not be determined by any judgment that could be rendered in this case. The second, because the plaintiffs have no manner of right, title, interest or claim to the three thousand dollars. The defendants were prudent enough to guard against loss in having to pay rent while the building was destroyed, by insuring against such loss. Their money bought the indemnity. The plaintiffs had nothing to do with it. It is immaterial in this case whether the insurance company acted wisely or not in paying the three thousand dollars before the defendants had been compelled to pay rent, but whether it was wisely done or not it gives the plaintiffs no right to that money.

## V.

Lastly, it is contended that the judgment in favor of the People's House Furnishing Company for the rent paid for March and the proportionate part of the month of February is erroneous, because the payments therefor were voluntary.

That for February was paid before the fire. That for March was paid upon the assurances of the lessors that they were pushing the work of rebuilding. According to the strict reading of the lease, the defendants might not have been liable to pay the rent for March until and unless the lessors complied with their covenant and rebuilt within a reasonable time, and therefore the payment by the defendants of that month's rent was premature.

But if this is true the same logic would cut off the plaintiffs' right to recover rent in this case for the months of April and May, for the same conditions as to rebuilding existed when this suit was begun.

This, together with the fact that the rent for February had been paid before the fire, might be enough to dispose of this contention. But it does not lie in the mouth of the plaintiffs to make any such contention. This is a suit in equity—made so by the cross-bill, and when the court decreed a cancellation of the lease it did the right thing, at the proper time, when it compelled the plaintiffs to return the rent they were not, in good conscience, entitled to retain, because they had not complied with the covenant of their lease, upon the performance of which their right to the rent depended. [6 Am. and Eng. Ency. of Law (2 Ed.), p. 976.]

The judgment of the circuit court is right and it is affirmed. All concur, except *Robinson, J.*, absent.