Nettie McCULLOUGH, Appellant,

v.

Pauline B. NEWTON, Respondent.

No. 48535.

Supreme Court of Missouri,
Division No. 2.

July 10, 1961.

Clay Cantwell, Branson, for appellant.

Joe R. Ellis, Royle Ellis, Cassville, for respondent.

EAGER, Judge.

This suit involves title to approximately 120 acres of land in Stone County, adjoining the Table Rock Reservoir. Plaintiff filed suit for rescission of her contract of sale, claiming a breach, and for damages; defendant's answer was amended so as to pray specific performance. The answer was treated by the court and the parties as a counterclaim (and see § 509.090 RSMo 1959 and V.A.M.S.*),[1] plaintiff's claims were denied in toto, and specific performance was decreed. Plaintiff has appealed.

On November 20, 1958, plaintiff Nettie McCullough as seller and Pauline B. Newton as buyer executed a contract for the sale of this specifically designated tract; $500 was paid at the time, the total price was $6,500, and the balance was to be paid when "seller has had full settlement with Government on land taken for Table Rock Reservoir and can deliver a clear title." The seller was to furnish an abstract within 30 days, and possession was to be given "on or before the —— day of when deal is closed, 194—."

Suit was filed on June 22, 1959. The amended petition is in two counts. In the first, plaintiff alleged: the making of the contract, the fact that a condemnation suit was pending involving land of plaintiff "adjoining the land described"; that defendant was not to have possession until that case was fully settled; that it had not been settled; that defendant had, without any authority, breached the contract by taking possession of the land about April 1, 1959, and by committing waste thereon; that plaintiff had elected to rescind the contract, and was ready to tender the $500 deposit; that plaintiff had no adequate remedy at law, and that she therefore prayed rescission.

In the second count (which adopted various allegations of the first) damages of $5,000 were prayed because of defendant's alleged destruction of timber, grading off of topsoil, and destruction of a stock pond. It was not alleged that the government was taking any of the tract in question. Defendant's answer, stated separately as to each count, admitted the making of the contract and the pendency of the condemnation suit at the time of the contract; it denied generally plaintiff's other allegations. Defendant alleged affirmatively: that after the execution of the contract plaintiff and defendant agreed that defendant, her agents and assigns, could go into possession and make improvements on the land; that they did enter into possession and make valuable improvements and spent large sums in doing so; that defendant was ready and willing to perform the contract fully, upon plaintiff's compliance. She prayed that the rescission count be dismissed and for general relief; also, that the count for damages be dismissed and defendant discharged. At the close of the evidence defendant was permitted, by leave, to amend her answer to count one by adding the following: "Defendant states that the contract entered into by and between plaintiff and defendant set forth in plaintiff's petition is a valid contract for the sale and conveyance to the defendant of the land therein described, and that defendant is entitled to have specific performance of the contract. * * * And that specific performance of said contract may be decreed." The record of the judgment entry recites that plaintiff consented to this amendment. That assertion is not denied in the briefs.

A Mr. Broadhurst negotiated this contract for Mrs. Newton; they had acted together on other deals and were to be partners on this one. There was substantial testimony from Broadhurst and defendant that the question of possession was discussed almost immediately after the con-

---

* Now V.A.M.R. Civil Rule 55.10.

1. All statutory references will be to these revisions.

tract was signed, and that plaintiff told them that they might enter the property and improve it, preparatory to resale or to developing an airstrip, provided they would let plaintiff "go along occasionally," so that people would think that she was having the work done. Broadhurst testified that he told her that they were going to resell or develop the property; that soon after the date of the contract he walked over the land with plaintiff and explained what they intended to do, and that she made no objection; also, that she went with him to visit one or more neighbors to get help in clearing brush along the lake front, in aid of their project. At this point we digress to say that there is a fair inference, resting upon statements attributed to plaintiff, that plaintiff thought that a known sale of this property or an open delivery of possession might adversely affect her settlement with the government on the adjoining land which was actually taken for the lake. There is nothing in this record to show that any such fears were well founded. At trial time settlement had been made, and plaintiff made no attempt to show that her interests had been adversely affected.

We return to the chronology. Someone, probably Broadhurst, conceived the idea that this property was suitable for a "ridge" airstrip adjacent to the lake. During the latter part of March 1959, defendant contracted to sell the land to one Hilderhof of Kansas City, having interested him in the project. Soon after April 1, a partner or associate of Hilderhof, Lee Brown, went to see plaintiff and he testified that she gave him permission to move a bulldozer and his trailer on the land and to "go ahead." This testimony was confirmed by a local witness who was present, one Loren Garrison, who was well known to plaintiff. Apparently plaintiff again stated then that she wanted the project to appear as though she were doing the work. The work of grading the land, removing timber, and draining and filling the pond proceeded promptly, at a cost of approximately $2,700 to Brown and Hilderhof. There was evidence that

plaintiff saw the work proceeding, without objection; some of this came from disinterested witnesses. About a month or more after the work started, plaintiff began to make rather vague objections; she stated to Brown, according to his testimony, that she wanted to break her contract and asked if "we would help" her do it. Defendant's contract with Hilderhof called for immediate possession.

Plaintiff produced no testimony but her own. She denied that she ever gave anyone permission to take possession, and stated that she first learned of the work early in April 1959, which, in fact, was when it began. She testified: that she posted notices on the premises "not to move in," and she talked to Broadhurst; that, however, he told her that they had sold the place, that they were going to keep possession, and that she might as well sign a deed; that she did not make final settlement with the government until February 1960; that she had been back to the place a time or two removing some wire, a lawnmower, etc.; that she had given Brown permission to haul gravel from the creek and stock-pile it on the land, but this was not done; that she was unable to get an abstract within 30 days, but neither defendant nor Brown complained. She admitted that she had agreed to accept $6,500 for the land, and denied asking any help to break the contract. There was some confused testimony about setting a closing date for June 23, 1959, because plaintiff was going to close a deal on other land upon that date. We give this no consideration, primarily because we cannot understand it. This suit was filed, as previously stated, on June 22, 1959.

The suit for a rescission was, of course, in equity. The count for damages was based upon a supposed wrongful entry, and apparently sought additional, not alternative, relief. Ordinarily a claim of rescission is inconsistent with a claim of damages for breach of contract. City Light, Power, Ice & Storage Co. v. St. Mary's Machinery Co., 170 Mo.App. 224, 156 S.W.

83. The judgment entry shows the waiver of a jury, whether necessary or not. The court found the issues generally against plaintiff on both counts, and found that the contract should be specifically performed. No one asked for special findings. As provided in § 510.310,** all fact issues are therefore "deemed found in accordance with the result reached." See also Bank of Brimson v. Graham, 335 Mo. 1196, 76 S.W.2d 376, 382, 96 A.L.R. 399. And in any event we would defer on questions of credibility to the findings of the trial court.

■ Plaintiff's counsel objected on one or two occasions to the admission of oral testimony of conversations with plaintiff concerning possession of the land; this, on the ground that it was sought thereby to vary the written contract. On other occasions no objections were made to similar testimony. The trial court took the view that this evidence did not constitute an attempt to vary the contract, but that it merely went to show a waiver. Plaintiff has not briefed here the incompetency of this testimony. Its admission, in an equity case, would not be ground for reversal in any event, and we merely consider it or disregard it according to its competency. We determine here that this line of testimony was not incompetent, and that it did merely go to show a waiver of the contract terms or an estoppel. See Katz v. Dreyfoos, Mo.App., 26 S.W.2d 999, 1001, and cases cited; Stout v. Edwards, Mo.App., 210 S.W. 128, 129.

■ Plaintiff insists: (a) that there was a breach of the contract for which she may rescind; (b) that the court had no jurisdiction to grant specific performance because of insufficiency of defendant's pleading; and (apparently as a separate contention) that the counterclaim did not state a claim on which relief could be granted. A party to a contract may, in certain instances, elect to rescind upon a breach by the other party. Lincoln Trust

Co. v. Nathan, 175 Mo. 32, 74 S.W. 1007. Ordinarily, such a breach should be of a mutual or dependent covenant, Lincoln, supra, or of a vital provision going to the very substance or root of the contract, Pasquel v. Owen, 8 Cir., 186 F.2d 263, or to the whole consideration of the contract, Haydon v. St. Louis & San Francisco R. Co., 222 Mo. 126, 121 S.W. 15, 19; 12 Am.Jur., Contracts, § 440, pp. 1020–1021; Howe v. Howe & Owen Ball Bearing Co., 8 Cir., 154 F. 820, 826, 83 C.C.A. 536. The doctrine does not ordinarily apply to breaches of provisions which are subordinate or incidental in nature, the injured party being remanded to a claim for damages, if any. Haydon, supra; Am.Jur., supra; Howe, supra. Here the parties had entered into a valid, subsisting contract for the sale of land. Under the facts of this case a premature possession could only have had one possible adverse effect on the seller,— namely, some prejudice in her dealings with the government on her adjoining land. She had settled fully with it at the time of trial and testified to no damages or adverse effect whatever. If there was a breach of this contract, we hold that the breach was of a subordinate provision, and of one not going to the "root" or to the whole consideration; the buyer certainly did not abandon the contract, or refuse to perform, or render its performance impossible, and she stood ready and willing to take the title and pay the balance at any and all times. If this was a breach, it was such a breach as might have been compensated in damages, without a rescission. We hold that under these circumstances an action for rescission would not lie.

■ So far as plaintiff's claim for rescission is concerned, it is not necessary to consider defendant's contention of a waiver; however, since the court granted specific performance, defendant's position in a court of equity becomes material. And this may also be material on any possible claim of plaintiff for damages. We find

** Now V.A.M.R. Civil Rule 73.01.

from all the evidence that plaintiff specifically agreed to permit defendant and her agents and assigns to go into possession and to make the desired improvements; that she saw substantial work being done without complaint, and permitted defendant's assigns (to whom defendant had contracted for resale) to spend substantial sums in developing the property. We conclude that plaintiff was thereby estopped to claim a breach of the contract. Evans v. Evans, 196 Mo. 1, 93 S.W. 969, 977; Jones Store Co. v. Dean, 8 Cir., 56 F.2d 110, 113; In re Jamison's Estate, Mo., 202 S. W.2d 879, 886; Bogad v. Wachter, 365 Mo. 426, 283 S.W.2d 609, 614. In Evans, supra, the court said (93 S.W. loc. cit. 977): "It is elementary law, too, that one may not stand by in silence, and see his opponent shift his position or renounce his substantive rights on the theory a contract exists and afterwards seek to avoid the contract. That he who does not speak when he should, may not speak when he would, is a commonplace of the law of equitable estoppel." And in In re Jamison's Estate, supra, the court said (202 S.W.2d loc. cit. 886): "In Faxton v. Faxton, supra, 28 Mich. 159, 161, the court said: 'There is no rule more necessary to enforce good faith than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on. The rule does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect.'" See also, 12 Am.Jur., Contracts, § 415, p. 994. The parties have briefed this point as a waiver. Perhaps it might be so considered, for waiver and estoppel are often closely related. Waiver, however, is more often applied to a failure to perform some element of a contract as provided, or within the time stipulated. Kyner v. Bryant, 353 Mo. 1212, 187 S.W.2d 202;

Chapman v. Breeze, 355 Mo. 873, 198 S.W. 2d 717. The distinction here is more or less inconsequential. Under § 509.090 either estoppel or waiver should be pleaded as an affirmative defense. At no point has plaintiff raised this question. We hold, however, that the answer here is sufficient. It pleads all the facts upon which the estoppel is based, namely, the making of the contract, the agreement to permit defendant, her agents and assigns to go into possession and make improvements, the fact that they did so enter, and the fact that they made valuable improvements and spent large sums of money thereon. The fact that the word "estoppel" was not specifically used is not decisive. In Stumbaugh v. Hall, Mo.App., 30 S.W.2d 160, 164, it was held that estoppel was available if the defendant had pleaded and the evidence showed facts sufficient to justify it. In Berry v. Cobb, 223 Mo.App. 934, 20 S. W.2d 296, loc. cit. 297–298, the court said: "It is not necessary to expressly plead that appellant was estopped, but, if the allegations therein amount to an estoppel, estoppel may properly be made a defense. Cadematori v. Gauger, 160 Mo. 352, 61 S. W. 182." And in Gehlert v. City of Union, Mo.App., 244 S.W. 97, loc. cit. 99, the court said: "A plea of estoppel is sufficient if it pleads the facts and elements of estoppel. Gillen v. Insurance Co., 178 Mo.App. 89, 161 S.W. 667." In this day of simplified pleadings, where a statement of the facts is the ultimate requirement, and technical forms are not required (§ 509.050, § 509.-250, § 509.040 ***), it would be hypertechnical to adjudge this pleading insufficient as a plea of either waiver or estoppel. The case was tried, pro and con, on a theory of waiver, although plaintiff did, a time or two, object to the competency of the testimony. Being thus estopped, plaintiff is certainly precluded from any recovery of damages, even though considered independently of rescission. And, under these circumstances, defendant was guilty of no

*** Now V.A.M.R. Civil Rules 55.06, 55.26, 55.05.

**144**

breach which would preclude specific performance.

■ What we have already stated is applicable in some measure to the remaining points, which consist of an attack on the sufficiency of defendant's pleading. Conceivably, these should have been considered earlier, but in our view, this is immaterial. Plaintiff says, first, that defendant did not plead sufficient facts to state an independent cause of action in equity and to give the court jurisdiction over the subject matter. This seems to hinge on the contention that defendant failed to state, in so many words, that her "legal remedies were inadequate," plus the fact that one of the blanket denials in the answer constituted a denial of plaintiff's allegation of equity jurisdiction for the purpose of rescission. Bragg v. Specialty Shoe Machinery Co., 225 Mo.App. 902, 34 S.W.2d 184, cited by plaintiff, merely holds that a petition must state *facts* sufficient to invoke equity jurisdiction. Any statement apparently to the contrary in Moskovitz v. Reynolds, Mo.App., 248 S.W. 618, would seem to be dicta, but actually that case does not really purport to decide the point which plaintiff raises.

■ Here plaintiff invoked the equity jurisdiction in the first place; defendant admitted the making of the contract, and that plaintiff was the owner of the land; she affirmatively alleged the subsequent agreement to permit possession and improvements, the entry and the making of improvements, and her readiness to perform the contract fully; by amendment, consented to, she was permitted to add the allegations that the contract was valid and that defendant was entitled to specific performance, with a prayer for that relief. In this state of the record equity certainly acquired jurisdiction over the subject matter of the contract, and having done so, it might do complete justice. Wenzelburger v. Wenzelburger, Mo.App., 296 S.W.2d 163, 165; Anison v. Rice, Mo., 282 S.W.2d 497, 502. This is not to say however, that one may recover on

a theory inconsistent with his pleading. Kemp v. Woods, 363 Mo. 427, 251 S.W.2d 684; Congregation B'Nai Abraham v. Arky, 323 Mo. 776, 20 S.W.2d 899. There has been no change of theory by defendant here; she has affirmed the contract throughout the controversy and, by the amendment, merely sought its enforcement. The mere fact that she failed to allege in so many words that her legal remedy was inadequate did not render her pleading insufficient, though that additional allegation may be preferable. The subject of this controversy, as demonstrated throughout the pleadings and in the evidence, was a contract for the sale of a specific tract of real estate which defendant's assigns were developing. A specific tract of real estate is treated as *unique* for the purpose of the specific performance of a contract to convey, "irrespective of special facts showing the inadequacy of a legal remedy." Rice v. Griffith, 349 Mo. 373, 161 S.W.2d 220, 225. See, also, Farrington v. Hays, 353 Mo. 194, 182 S.W.2d 186, 190, certiorari denied 323 U.S. 797, 65 S.Ct. 441, 89 L.Ed. 636. Certainly the mere absence of the conclusory allegation that defendant's legal remedy was inadequate did not render the defendant's pleading insufficient either for the purpose of jurisdiction or as constituting a failure to state a claim. Defendant's blanket denials of certain paragraphs in the amended petition should certainly not control, in the light of the specific issues made. Plaintiff's last point, that no claim was stated because there was a fatal lack of any allegation that money damages or legal remedy was inadequate, has been answered. We hold that the inadequacy may be stated sufficiently by a statement of the constitutive facts, even though it may be preferable to state also the conclusion of inadequacy. There is nothing in the cited cases of Farrington v. Hays, supra, or Whiting v. Enterprise Land & Sheep Co., 265 Mo. 374, 177 S.W. 589, really to the contrary. Whiting, only holds, in essence, that the facts pleaded must justify the relief granted; in Farrington, the complaint was of a failure to allege additional facts show-

ing loss or detriment, to which the court replied that, land being involved, it was sufficient to allege generally the inadequacy of the legal remedy. Here the factual allegations were sufficient. See 49 Am.Jur., Specific Performance, § 162, pp. 185–186. Homan v. Employers Reinsurance Corp., 345 Mo. 650, 136 S.W.2d 289, 301, 127 A.L.R. 163. Especially is this true in view of the universal power of equity to grant full and complete relief, having once acquired jurisdiction, even under a prayer for general relief.

Plaintiff mentions in the argument that the court erred in refusing evidence offered to show that money damages would have sufficed, namely, by a showing of the contract price on defendant's resale. That evidence could not have been controlling, if admitted. Plaintiff overlooks the potential liability of defendant to her purchasers for a failure to convey the specific property. And, again, the law looks upon such a property as "unique."

The judgment of the trial court is affirmed.

All concur.