**COMMERCE TRUST COMPANY,**
Appellant,

v.

**Calvin E. DENSON, Respondent.**

**No. 24952.**

Kansas City Court of Appeals.
Missouri.

Dec. 2, 1968.

Rehearing Denied Feb. 3, 1969.

Dennis G. Muller, Muller & Muller, Kansas City, for appellant.

Richard P. Shanahan, Jones & Mc-Daniel, Kansas City, for respondent.

MORGAN, Judge.

This is a suit on a promissory note by plaintiff as indorsee against defendant as the maker. Judgment was entered for defendant and plaintiff has appealed.

The cause was tried to the court on a stipulation of facts. On November 18, 1964, defendant purchased a new 1965 Mustang automobile from Rudy-Fick, Inc., of Kansas City, Missouri. The sale was consummated in compliance with the statutory provisions covering "Motor Vehicle Time Sales." Chapter 365, V.A.M.S. The details of the transaction, as required by this chapter, were clearly outlined to advise the purchaser, defendant herein, of all additional charges that were occasioned by the financing of the purchase price of the automobile. The form used is entitled "Missouri Motor Vehicle Chattel Mortgage," and the bottom portion of the same instrument is designated by the caption "Note." The mortgage portion of this instrument identifies the buyer and seller and describes the vehicle. The cash price of the Mustang is listed as $2,875.00. To this amount is added interest and financing charges of $584.00 (Time Price Differential) plus insurance premiums of $199.00 for a total "Time Sales Price" of $3,658.00. A down payment of $292.00 was deducted and the note in question was in the amount of the balance or $3,366.00. The charge for insurance included a "Credit Life" policy with a premium of $101.00 and $98.00 for collision or physical damage coverage for a period of 12 months from the date of purchase. The latter provision and subsequent events created the issues involved in this action. By stipulation of the parties an additional document entitled "Customer's Statement" was incorporated in the original contractual arrangement. It reflected the employment income and credit record of defendant in addition to the planned insurance coverage. It provided: "Minimum physical damage insurance is required for the full term of the installment contract to protect all interests thereunder against fire, theft, the additional hazards covered by Combined Additional Coverage, and deductible collision. The next printed provision was, "Do you desire

that the seller apply for the minimum kinds of insurance described in the preceding sentence?" The answer indicated was "Yes." In this connection, the stipulation of facts specifically states, " * * * the whole amount of the premium to be paid on a deferred basis and to be included in the note and chattel mortgage." On the same day, November 18, 1964, defendant took delivery of the Mustang. On December 23, 1964, he received a copy of the insurance policy which provided collision coverage for a period of 6 months from date of purchase to May 20, 1965. It was issued by The Insurance Company of the State of Pennsylvania through an agent designated as Forward Agency, Inc. of Northfield, Illinois. On April 28, 1965 this agency wrote defendant it did not plan to renew the policy. On June 13, 1965, defendant was in an accident in Memphis, Tennessee, while driving this automobile. The repair bill of the Southside Garage in Memphis was in the amount of $612.00. The original policy had expired during the preceding month and defendant refused to make further payments on the note. Prior to the accident he had paid the 6 installments of $93.50 each.

Rudy-Fick, Inc. endorsed and assigned the note and chattel mortgage to the plaintiff, Commerce Trust Company of Kansas City, Missouri, on the day the automobile was sold. Plaintiff, as stipulated, " * * * remitted on behalf of the dealer the sum of the physical damage insurance premium to the * * * (Forward Agency) * * * together with a request for insurance coverage exactly as indicated on chattel mortgage and credit application." It is agreed plaintiff received a copy of both the policy with the limited 6 months coverage as well as the letter stating the policy would not be renewed. The evidence indicates plaintiff did not take any action in connection with the receipt of either. On September 9, 1965, plaintiff paid the $612.00 repair bill in Memphis and took possession of the Mustang. Notice was given to defendant of plaintiff's intent to sell the re-

paired automobile, and on October 27, 1965, plaintiff did sell it to the Kansas City Automobile Auction Co. for $1,467.50. After deducting the repair bill and expenses of $61.00, a credit of $794.50 was applied on the note. This suit is for the balance of $1,956.97.

The trial court made no specific findings or conclusions of law, but from the wording of the judgment in favor of defendant, it appears that the court concluded that plaintiff was not a holder in due course of the note and was thereby vulnerable to all defenses that could have been asserted against the payee, Rudy-Fick, Inc. The judgment expressly found plaintiff contractually obligated to provide physical damage insurance coverage; and that the evidence created a reasonable inference the value of the automobile immediately prior to the accident was greater than the balance of defendant's obligation and thereby he had been discharged. We will accept the latter finding as a determination that the failure of plaintiff to provide insurance coverage for the benefit of all parties was such a material breach of the contract that rescission thereof by defendant was legally justified.

In view of the case having been submitted on the pleadings and a written stipulation of facts, our duty is to review the whole case on the merits. Civil Rule 73.01 (d) V.A.M.R. From the briefs presented here it is apparent the parties have no quarrel as to the legal principles brought into focus by the issues raised. Only their proper application to the instant facts is in dispute.

We look initially to see if plaintiff was, in fact, a bona fide holder in due course of this note. It was executed prior to the effective date of the "Uniform Commercial Code" (on July 1, 1965) and Section 401.052, R.S.Mo. 1959, V.A.M.S., is applicable. It provides, in part, that, "A holder in due course is a holder who has taken the instrument under the following conditions: * * * (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." There is no question but that the note was complete and regular on its face and was purchased for value by plaintiff before the first monthly installment became due. However, it has been declared many times that a note and chattel mortgage, concurrently executed, must be considered together. Slyman v. Simon, 226 Mo.App. 1000, 48 S.W.2d 140, 142. Plaintiff so agrees by conceding, "Nor is it questioned but that plaintiff was bound to take notice of what was contained in the chattel mortgage executed contemporaneously with and attached to the mortgage." From the agreed facts, it is obvious notice was taken by plaintiff of the obligation of payee, Rudy-Fick, Inc., to obtain collision coverage for a period of one year. It was even stipulated that the amount of money needed to accomplish this was to be "included in the note." Although it could be argued, justifiably, that the original parties actually merged the entire transaction into one agreement, we will consider the promise to obtain collision coverage as a contemporaneous and collateral contractual arrangement. The legal significance of such a collateral agreement has been clearly defined. "It is a well-established rule of law that knowledge that negotiable paper was given in consideration of an executory agreement of the payee, which has not been performed, will not deprive the indorsee of the character of a bona fide holder, unless he also has knowledge of the breach of the agreement." Levy v. Artophone Co., Mo.App., 249 S.W. 158; Farmer's State Bank v. Miller, 222 Mo.App. 633, 300 S.W. 834, 839. This principle is now codified by Section 400.3–304 (4) (b) of the Uniform Commercial Code. In the instant case, under the authorities cited, plaintiff could have purchased the note as a holder in due course notwithstanding the executory promise of payee thereof to purchase the insurance coverage called for. If the payee had then breached the agreement, defendant's only recourse would have been an action for damages against Rudy-Fick, Inc. How-

ever, plaintiff did not do this. It, in fact, made itself a party to the original contract by assuming the obligation to provide the desired insurance. By this action plaintiff made it obvious it had notice the payee, Rudy-Fick, Inc., had failed to perform the agreement and had no intention of so doing, because plaintiff took over this obligation. Whether plaintiff's action regarding insurance was as an agent for a disclosed principal, the dealer, and consequently might create no liability on it, as argued by plaintiff, is immaterial for the reason we are here only concerned with whether or not plaintiff had notice of the nonperformance of the collateral agreement. After assuming this burden, and failing to provide the desired insurance protection for 12 months as agreed, we must find that plaintiff not only had notice of nonperformance at the time it purchased the note but has had continuing knowledge of this fact. For that reason, plaintiff had notice of this infirmity in the note and cannot qualify as a bona fide holder in due course as contemplated by the statutes. Plaintiff, in seeking to bolster its position, contends the issue here is affected by Section 365.070, V.A.M.S. This section outlines the provisions to be included in an installment contract for the sale of a motor vehicle. One sentence of sub-section (1) provides: "Any such note, if otherwise negotiable under the provisions of chapter 401, RSMo, shall be negotiable." We do not believe this sub-section was intended in any manner as a departure from or modification of the law pertaining to negotiable instruments.

We must next consider if the breach of the agreement to obtain insurance coverage was such a material breach of the contract as to warrant rescission thereof by defendant. What is a material breach? Our Supreme Court in Transportation Equipment Rentals, Inc. v. Strandberg, Mo., 392 S.W. 2d 319, 324, stated: "As its final point plaintiff contends that the instruction was erroneous because it did not define the phrase 'material breach.' We have concluded that the words involved are not technical but are ordinary words which are commonly understood and that no special definition was required. We note from an examination of Vol. 32, Mo. Dig., Words and Phrases, that no appellate court of this state has defined the phrase 'material breach.' That fact could reasonably be considered as an indication that the courts have considered it unnecessary to define same." Necessarily, the term can only be accepted in a relative sense. What might be considered a material breach in one instance might be considered to be the breach of an incidental provision in another contract. In McCullough v. Newton, Mo., 348 S.W.2d 138, it was held: "A party to a contract may, in certain instances, elect to rescind upon a breach by the other party. Lincoln Trust Co. v. Nathan, 175 Mo. 32, 74 S.W. 1007. Ordinarily, such a breach should be of a mutual or dependent covenant, Lincoln, supra, or of a vital provision going to the very substance or root of the contract *. " Did the promise to obtain insurance coverage go to the "root" of this contract? We need not evaluate or resolve the significance of the insurance provision to determine whether it was a material or incidental covenant, if we can find how the contracting parties so considered it. The "Customer's Statement" heretofore mentioned is captioned "Commerce Trust Company, Kansas City, 41, Missouri" and was apparently a printed form provided by plaintiff. As set out above, it provided physical damage insurance *was require*d to protect *all interests*. It being a mandatory provision, as designated by plaintiff, makes us conclude, as did the trial court, and also the parties at the time they entered this contract, that such a requirement was indeed a vital provision going to the very crux of the contract. We find there was a material breach of the contract in this case.

█ Plaintiff further contends that defendant has waived any complaint of plaintiff's default by not obtaining a policy of his own choosing when advised the carrier

**98**

here did not plan to renew the policy after the initial six months period. The case of Woolfolk v. Jack Kennedy Chevrolet Company, Mo.App., 296 S.W.2d 511, is cited as authority for this contention. In that case the dealer had agreed to obtain coverage but could only obtain a policy protecting the mortgagee. The dealer refunded to the purchaser a portion of the premium previously charged and advised the purchaser of his inability to obtain complete coverage. The accident there involved was some 15 months later and recovery of the damage by the buyer was denied. The court found, 1.c. 514, "There is good reason and authority for holding that whatever the parties see fit to accept as performance of the contractual obligations will be so regarded by the courts." The instant case is distinguishable. Here there was no communication whatever between plaintiff and defendant regarding the question of insurance prior to the accident. Plaintiff, either alone or in cooperation with the dealer, had elected to place the policy through an agency in Illinois. There is no suggestion defendant was even consulted in this connection. It does not seem that a normal person, in defendant's position, would have been at all disturbed that a particular company did not plan to continue coverage for the remaining six months of the agreed 12 month term. We believe it would have been a normal reaction for defendant to assume that plaintiff, a highly reputable and leading financial institution, would fully comply with its assumed obligation. To say defendant waived this neglect or default by plaintiff is not justified.

We conclude that plaintiff did breach a material provision of the contract which justified rescission thereof by defendant. Such failure to perform has resulted in the virtual loss of the entire consideration of the original contract. 17 Am.Jur.2d Contracts, Sec. 507, p. 988.

The judgment of the trial court being correct is hereby affirmed.

All concur.